726 A.2d 1026

COMMONWEALTH of Pennsylvania, Appellee,

v.

Simon PIRELA a/k/a Salvador Morales, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 9, 1996.

Decided Feb. 16, 1999.

Reargument Denied April 1, 1999.

36

Andrew L. Fish, Philadelphia, for S. Pirela.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal from the order of the Court of Common Pleas of Philadelphia County denying the motion of appellant for post-conviction relief. In the underlying case, the court, sitting without a jury, convicted appellant of murder of the first degree and criminal conspiracy. After a sentencing hearing, the court found one aggravating circumstance, appellant's previous murder conviction for which he had received a sentence of life imprisonment, and one mitigating circumstance, appellant's age.[1] The court also found that the aggravating circumstance outweighed the mitigating circumstance and sentenced appellant to death. The court then denied appellant's post-trial motions and formally sentenced appellant to death.[2] This court affirmed the conviction and sentence on direct appeal. *Commonwealth v. Pirela*, 510 Pa. 43, 507 A.2d 23 (1986).

Appellant filed a *pro se* habeas corpus petition in 1990 in federal court. The federal court judge entered a stay of execution, appointed counsel and suspended the petition pending exhaustion of state court claims. Two years thereafter, appellant filed a motion in the Court of Common Pleas of Philadelphia County seeking post-conviction relief. His petition was consolidated for hearing and argument with a petition filed in his other first degree murder death penalty case. *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985).

1. Appellant also argued extreme mental and emotional distress; however, only age was determined to be a mitigating factor.

2. Appellant received a suspended sentence for criminal conspiracy.

Following hearings regarding discovery before Judge Papalini and a reassignment of the case to Judge Stout, appellant's requests were denied without an evidentiary hearing. This appeal followed.

The convictions resulted from circumstances involving a killing for vengeance. These circumstances were stated in *Pirela*, 510 Pa. at 46–48, 507 A.2d at 24–25 (1986) as follows:

At approximately 1:00 a.m. on May 5, 1981, Pablo Ortiz, the victim in this case, was visited at his home by Carlos Tirado and Miquel Pirela, the brother of appellant. The three young men left the home of Ortiz and "shot" heroin. When Pirela became ill, Ortiz and Tirado delivered Pirela to his home. Pirela's wife testified that when she awoke on the morning of May 5, her husband was dead. Although all three men had used heroin from the same source and the same appliances, only Miquel Pirela died. The cause of Pirela's death was determined to be a drug overdose, achieved through non-homicidal means.

Later on the day of May 5, Simon Pirela, the appellant, visited Ortiz's home and announced his intention to kill Pablo. Appellant said that Pablo had killed appellant's brother and either Pablo or Carlos Tirado "had to go." Gilberto Giraud Romero, who was also charged in connection with the murder of Pablo Ortiz, testified for the Commonwealth against appellant and his two co-defendants. Romero testified that on May 6, the day after Miquel Pirela's death, at about 1:00 p.m., he went to his sister's home. There both appellant and his brother, Heriberto Pirela, announced their intentions to kill Pablo Ortiz. Approximately 20 minutes later Ortiz joined the men. Both Pirela brothers inflicted a brutal beating upon Ortiz who was struck by fists and by a tire which was mounted on a rim. Ortiz was then pushed into the basement of the house where the beating continued. Eventually, Heriberto Pirela instructed Carlos Tirado to inject Ortiz with battery acid, or face death himself. While appellant and Pedro Torres held Ortiz's hands, the injection was accomplished. Ortiz became unconscious.

Ortiz's unconscious body was loaded into an automobile belonging to Heriberto Pirela, and Romero was instructed to drive. Appellant warned Carlos Tirado that if Pablo Ortiz did not die, appellant would kill Tirado. While Romero drove the automobile, Tirado strangled Ortiz with a pair of socks. Romero was warned by appellant that if he "ratted" on appellant, appellant would kill him. The families of Romero and Tirado were also threatened. Much of Romero's testimony was corroborated by Carlos Tirado who testified on his own behalf.

Appellant admitted hitting Pablo Ortiz in the course of questioning Ortiz as to the cause of Miquel Pirela's death. However, appellant testified that the murder of Pablo Ortiz was the handiwork of Carlos Tirado, and that appellant neither participated in nor directed the homicide. The fact finder specifically found appellant's testimony incredible. Ortiz's dead body was deposited on a bridle path in Fairmount Park where it was discovered by a jogger. The immediate cause of Ortiz's death was determined to be strangulation. The beating was deemed to be a contributory cause in that it may have left Ortiz defenseless when the ligature was applied.[3]

Appellant must demonstrate eligibility for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9543. The following deals with the PCRA as it existed in early 1995, the time frame of appellant's PCRA filings and the lower court's decision.[4] Sections 9543(a)(2) and (3) required, in relevant part, the following:

3. Appellant was tried jointly with two of his co-conspirators, Heriberto Pirela and Carlos Tirado. Each was found guilty of murder of the first degree and criminal conspiracy. Both received a life sentence and a consecutive sentence of five to ten years for criminal conspiracy. *Commonwealth v. Tirado*, 345 Pa.Super. 622, 496 A.2d 854 (1985), *allocatur denied*, (1986) and *Commonwealth v. Pirela*, 345 Pa.Super. 620, 496 A.2d 853 (1985). Gilberto Giraud Romero pled guilty to charges of murder of the third degree and conspiracy in exchange for which he agreed to testify for the Commonwealth against appellant, Heriberto Pirela and Tirado.

4. 42 Pa.C.S. §§ 9543 and 9544 are stated as they existed at the time of appellant's PCRA filings in late 1994–early 1995, which was prior to an amendment in November, 1995.

**(a) General rule.**—To be eligible for relief under this sub-chapter, a person must plead and prove by a preponderance of the evidence all of the following:

. . . .

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . . .

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 Pa.C.S. §§ 9543(a)(2) and (3) (1988).

■ The first inquiry here is whether an allegation of error has been previously litigated. The term "previously litigated," under former 42 Pa.C.S. § 9544(a)(2), means that: "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *See, Commonwealth v. Szuchon,* 548 Pa. 37, 693 A.2d 959 (1997); *Commonwealth v. Crawley,* 541 Pa. 408, 413, 663 A.2d 676, 678 (1995), *cert. denied,* 517 U.S. 1212, 116 S.Ct. 1832, 134 L.Ed.2d 936 (1996); *Commonwealth v. Beasley,* 544 Pa. 554, 563–64, 678 A.2d 773, 777 (1996).

■ The next inquiry is whether the allegation of error has been waived.[5] An issue has been waived where the petitioner fails to raise it when it could have been raised at trial or on appeal, 42 Pa.C.S. § 9544(b), and an anti-waiver rule does not apply, 42 Pa.C.S. §§ 9543(a)(3)(ii) or (iii). *See, Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121 (1994); *Beasley, supra.* Waiver is excused under 42 Pa.C.S. §§ 9543(a)(3)(ii) or (iii) where the alleged error in the main case resulted in the conviction or affirmance of sentence of an innocent individual or from ineffective assistance of counsel at a point in the proceedings where defendant had a constitutional right to counsel, i.e., through direct appeal, provided the standards announced in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), and its progeny are met. *Beasley*, 544 Pa. at 565, 678 A.2d at 778.[6]

■ *Pierce, supra*, and subsequent cases require a defendant to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced defendant. An appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *Peterkin, supra.* Further, counsel cannot be considered ineffective for failing to assert a meritless claim and is presumed to have been effective. *Id.; Crawley*, 541 Pa. at 414, 663 A.2d at 679. Also, appellant bears the burden of proving all three prongs of the *Pierce* standard. *Commonwealth v. Baker*, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992).

■ In summary, appellant must demonstrate a number of things. First, he must demonstrate that the claim has not

---

**5.** Appellant urges this court to ignore his waivers in this death penalty PCRA appeal. Although we have declined to apply ordinary waiver principles to capital cases in the past, we recently held that this practice will be discontinued. *Com. v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (Pa.1998). Accordingly, appellant's request that we ignore his waivers is denied.

**6.** This does not address rights to counsel at a collateral stage where such rights may be provided by statute as opposed to the constitution.

been previously litigated and has not been waived. If the claim has been waived, appellant must demonstrate the waiver was the result of ineffective assistance of counsel at some point through the direct appeal.[7] If such demonstration is met, then appellant must demonstrate that the alleged violation of the state or federal constitution, or ineffective assistance of counsel, "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."[8]

Appellant first claims that his waivers of his right to a trial by jury at both the guilt and penalty phases were not voluntary, knowing and intelligent. Appellant argues the trial court assured him he would not be subject to the death penalty if he went non-jury, that he relied on this assurance to his detriment when he waived his rights to jury trials and, therefore, his sentence of death should be vacated. He further argues that counsel was ineffective for failing to fully inform appellant of the consequences of his jury waivers in light of the judge's possible retraction of an alleged promise not to impose the death penalty.

7. The record does not support any claim that waiver results in the conviction of an innocent person so the focus is on ineffective assistance of counsel.

8. Appellant argues that the PCRA court incorrectly stated the legal standards applicable to the prejudice leg of ineffectiveness claims. The PCRA court stated that appellant must establish ineffective assistance of counsel and also, citing *verbatim* the provisions of 42 Pa.C.S. § 9543(a)(2)(ii), that counsel's ineffectiveness "so undermined the truth-determining process so that no reliable adjudication of guilt or innocence could have taken place." Appellant argues a PCRA defendant only must satisfy the direct appeal standard of prejudice, i.e., that counsel's ineffectiveness undermined confidence in the outcome or that the result might have been different. He claims that he need not demonstrate that counsel's ineffectiveness also would have affected the trial's outcome.

In *Com. v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999), this court held that the language of the PCRA referred to by appellant "does not create a higher burden on a defendant to show ineffective assistance of counsel than the standard for proving ineffectiveness on direct appeal." 555 Pa. at 306–07, 724 A.2d at 330, 1999 Pa. Lexis 134 at 12. The PCRA court's statement of the legal standards applicable to prejudice in ineffectiveness claims, therefore, was correct and the claim is without merit.

■ In the direct appeal, this court found no merit to appellant's argument that the trial court promised a penalty of life imprisonment with her statement: "He's not subject to the death penalty as long as he has me for a judge." *Pirela*, 510 Pa. at 52–55, 507 A.2d at 27–29.[9] This court also rejected the

9. This court, in the direct appeal, ruled that the trial court judge did not guarantee or promise that appellant would not get the death penalty if he went non-jury. The record reflects that after the suppression hearing and prior to the trial, several motions were argued including a request for a ruling that the death penalty would be inappropriate for appellant because appellant was merely a conspirator to, and not the perpetrator of, the death of Ortiz. *Pirela*, 510 Pa. at 52, 507 A.2d at 27–28.

This court held that no error occurred for the following reasons. First, appellant's decision to waive a jury was made prior to the court's comment. Second, the court's dialogue immediately preceding that statement carefully instructed that counsel's motion respecting the appropriateness of the death sentence was premature and if the evidence proved as defense counsel predicted, appellant would not be sentenced to death by the tribunal. *Id.* at 53–54, 507 A.2d at 28.

Third, the record reflects that the trial court judge informed the prosecutor during the penalty hearing that she had "no conscientious and philosophical objections which would prevent [her] from imposing the death penalty in a proper case.... I will follow the law as I see it.... I will also tell you now that I will not impose a death penalty on all of them. That is not to say I won't impose the death penalty on some of them." This served to alert appellant's counsel of the possibility that appellant could be sentenced to death. *Id.,* 510 Pa. at 54, 507 A.2d at 28–29.

Fourth, during the extensive waiver colloquy preceding the penalty phase of the trial, the court informed appellant of the possibility of the death penalty, the process by which the death penalty would be determined and of his right to a jury. She inquired whether appellant discussed with his counsel whether he should waive a jury at the sentence phase. Appellant said "yes" and indicated that he was not forced or otherwise promised or coerced to waive his right to a trial by jury. *Id.,* 510 Pa. at 54, 507 A.2d at 29.

Also, the record reflects appellant signed a written waiver of right to a jury trial as required by Pa.R.Crim.P. 1101.

Contrary to appellant's contention, *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), is inapplicable. There, the issue dealt with whether a defendant had adequate notice that the death sentence may be imposed. The Court held inadequate notice existed: where the prosecutor declared that he was not seeking the death penalty and explained at the sentencing hearing why he was not seeking that penalty; defense counsel did not argue against the death sentence; and, the court gave no indication at the sentencing hearing that the court was considering a death sentence. Here, counsel was notified by the court prior to the sentencing hearing that the court was considering a death sentence. *Pirela*, 510 Pa. at 52–54, 507 A.2d at 28–29. As this

44

ineffectiveness claim because it was appellant's decision, and not counsel's decision, to waive the jury and be sentenced by the court and because, during the sentencing colloquy, appellant stated that his decision to waive the jury was not induced by any promises. *Id.* 510 Pa. at 55, 507 A.2d at 29.[10] Thus, the underlying issues have been previously litigated.

Appellant argues an alleged new issue, i.e., that appellate counsel was ineffective for failing to a present new evidence on appeal. Post-conviction review of claims previously litigated on appeal can not be obtained by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *Commonwealth v. Travaglia,* 541 Pa. 108, 121, 661 A.2d 352, 358 (1995), *cert. denied* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). The "new evidence" consists of affidavits wherein he and his counsel assert they relied on the judge's alleged promise and an affidavit from a clinical psychologist regarding appellant's limited capacity to understand the waiver proceedings. The record reflects that on direct appeal, appellant's claim involved allegations that both appellant and counsel relied on the judge's comment, and the court conducted an extensive waiver colloquy wherein appellant was questioned about his understanding of the proceedings and whether his choice to go non-jury was voluntary and knowing.[11] *Pirela,* 510 Pa. at 54, 507 A.2d at 28–29. The claim presents no new issue and, thus, the issue has been previously litigated. Even assuming it was not, it has been waived and is not excused by claims of ineffective assistance of counsel for there has been no demonstration of

court said on direct appeal, this was not a case where the prosecutor or the court represented that a certain penalty would not be imposed and appellant relied to his detriment. *Id.,* 510 Pa. at 55, 507 A.2d at 29.

10. He also claims that counsel was ineffective for allegedly failing to tell him that the court was considering a death sentence. As stated above, this court on direct appeal found that his waiver of a jury at both phases was freely and voluntarily given and not induced by any promises. Further, his statement at the sentencing hearing, "I am not understanding. Is the death sentence already imposed?" demonstrates he knew the court was considering the imposition of a death sentence.

11. Further, appellant does not dispute the evidence of his guilt.

error on the part of counsel or prejudice.[12] Appellant's claim is meritless.

The next claim is that appellant was denied a fair trial because the prosecution did not disclose allegedly exculpatory evidence of appellant's own pre-sentence psychiatric reports prepared for a different murder case one month earlier and that counsel was ineffective for failing to pursue it. Appellant contends the prosecution violated its obligation to turn over exculpatory materials under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Where a report does not contain exculpatory information, the prosecutor had no duty to bring it to a defendant's attention. *United States v. Agurs*, 427 U.S. 97, 108–10, 96 S.Ct. 2392, 2394–2401, 49 L.Ed.2d 342, 352–53 (1976). *See Commonwealth v. Christy*, 540 Pa. at 213 n. 17, 656 A.2d at 887 n. 17 (1995).

As the following illustrates, the claim is waived and the waiver is not excused by ineffective assistance of counsel. The record reflects that two psychiatric reports were prepared for another murder case for which appellant was tried and convicted one month earlier in 1983.[13] There, the doctors concluded in their written reports that: appellant did not "manifest a major mental illness which would be a factor in the disposition of his case;" and, "there are no psychological impairments which would preclude ordinary sentencing options."

Appellant fails to demonstrate that he, his trial counsel or his direct appeal counsel did not have access to these reports dealing with appellant's own mental health at the time of his trial or that they would have been helpful to his defense. The record reflects the reports contain nothing exculpatory by demonstrating appellant's innocence or a complete defense

12. Appellant does not argue that if a jury had heard the evidence presented to the trial court, the jury would have sentenced him to life imprisonment.

13. The case involved the murder of Jorge Figueroa, No. 84 Capital Appeal Docket 1995. *Morales, a.k.a. Simon Pirela*, 508 Pa. 51, 494 A.2d 367.

such as insanity.[14] Appellant, therefore, fails to demonstrate that he was entitled to them under *Brady*. Consequently, he fails to demonstrate counsel was ineffective and these issues are waived.

Appellant also argues that he was denied a fair trial because a second interpreter should have been provided to better enable him to confront witnesses and confer with counsel and, further, that trial counsel was ineffective for failing to request a second interpreter. Appellant, a Spanish-speaking person, points to no testimony of any witness which he did not understand or no instance where, because of the lack of an interpreter, he did not have the opportunity to confront witnesses. Further, the record reflects that appellant consulted with counsel during the testimony of various witnesses and, following the conferences, counsel asked additional questions of the witnesses.

Appellant also argues the trial court gave him insufficient time to decide whether to testify on his own behalf. The record reflects that appellant was given five minutes to confer with counsel and an interpreter during trial but that he had discussed the issue at least fifteen minutes prior to trial. Further, he does not allege that, given more time, he would have chosen not to testify or that, without his testimony, the result of the trial would have changed. In both claims, appellant has demonstrated no error on the part of the court or ineffectiveness on the part of counsel.

Since both claims are first raised on collateral appeal, they are waived as no ineffective assistance of counsel has been demonstrated. 42 Pa C.S. § 9544(b). Even if reviewable, they are meritless for appellant has failed to demonstrate that the alleged trial court or counsel errors prevented a

14. One doctor wrote:

This individual shows no evidence of psychosis or parimary [sic] affective disorder.... He appears to be a hostile, negative individual with significant passive-aggressive tendencies who is obstructionistic, self-centered, and rigid in his presentation ... Based on my findings in this interview, it is my opinion that this Defendant does not manifest a major mental illness which would be a factor in the disposition of his case.

reliable adjudication of his guilt or innocence or were caused by ineffective assistance of counsel.

▆ Next, appellant argues that trial counsel provided ineffective assistance in a number of instances.[15] He first argues that trial counsel failed to prepare for, or present, available mitigating evidence at the penalty phase because he was misled by the trial court's misrepresentation concerning the imposition of the death penalty and, thus, was *per se* ineffective. There must be an abdication of the minimum performance that is required for defense counsel to be *per se* ineffective. *Commonwealth v. Perry*, 537 Pa. 385, 392, 644 A.2d 705, 709 (1994).

▆ The record reflects that appellant's trial strategy was to present evidence leading to an acquittal of all charges.[16] A strategy aspiring to achieve an acquittal rather than a compromise verdict is considered effective assistance of counsel. *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979). The record reflects that on direct appeal, appellant argued he was guilty only of voluntary manslaughter because he was operating under a sudden and intense passion or that his rage negated his intent to commit murder of the first degree. *Pirela*, 510 Pa. at 48–51, 507 A.2d at 25–27. This court ruled that an intent to kill for murder of the first degree was

15. He claims trial counsel failed to: (a) prepare for or present available mitigating evidence at the penalty phase; (b) request psychiatric assistance at both guilt and penalty phases; (c) fully inform appellant of the consequences of the jury waivers; (d) request adequate provision of an interpreter at trial; and (e) call an allegedly favorable witness at the guilt phase of trial. Some of these ineffectiveness claims are dealt with in the context of broader issues.

16. As we stated in *Pirela*:

[B]oth of these suggested verdicts conflict with the defense presented at trial which was that appellant had no part in the killing of Pablo Ortiz. The theory advanced by appellant was that the homicide was conceived by either Tirado or Romero and executed by Carlos Tirado to advance some personal interest of either Tirado's or Romero's. Furthermore, appellant continues to argue on this appeal that he did not commit the fatal assault, did not attempt to kill and did not intend to kill Pablo Ortiz. These arguments are grounded on the fact that appellant was not present when the strangulation occurred.
*Id.*, 510 Pa. at 48, 507 A.2d at 25.

48

established because of appellant's repeated threats to kill the victim and his sudden and intense passion did not exist due to the passage of over twenty-four hours between the brother's death and the victim's murder. *Id.,* 510 Pa. at 49–51, 507 A.2d at 26–27.

On direct appeal, we also found meritless appellant's substantive arguments relating to mitigation evidence and related ones concerning ineffective assistance of counsel. *Id.,* 510 Pa. at 58–59, 507 A.2d at 31.[17] Appellant has not demonstrated that counsel was *per se* ineffective or ineffective at all. These issues have been previously litigated or waived.

Appellant contends that counsel was ineffective for failing to request expert psychiatric testimony which would have demonstrated that he suffered from organic brain dysfunction, which diminished his mental capacity and impaired

17. There, we said:

> [A]ppellant argues that the court failed to consider mitigating circumstances argued in accordance with § 9711(e)(2) and § 9711(e)(8). There is nothing in either the record or the opinion of the lower court that would lead us to conclude that the court failed to consider all the mitigating circumstances argued by appellant's counsel. The court was not required to believe appellant's arguments that, for example, he was under extreme mental or emotional disturbance when the homicide was committed. Nor was she bound to hold that either appellant's level of education or his migration to the United States mainland within eight years of the homicide are mitigating circumstances, which weigh toward a lesser penalty. The court did find that appellant's youth was a mitigating factor, but that it did not outweigh the aggravating circumstance of the other homicide conviction. There appears to be no impropriety in the conduct of the tribunal below, and appellant's argument to the contrary is without merit.
>
> . . . .
>
> Appellant also argues that counsel "failed to adequately prepare a presentation regarding any mitigating circumstances." This is appellant's entire argument. "[A] finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternative not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth v. Bandy,* 494 Pa. 244, 250, 431 A.2d 240, 243 (1981). . . . As appellant has failed to state what alternative course of conduct counsel could have chosen which would have inured to appellant's benefit, appellant has failed to state a cognizable claim of ineffectiveness.

*Id.,* 510 Pa. at 57–59, 507 A.2d at 31.

his judgment and caused his violent behavior. He makes this claim for both the guilty and penalty phases.

The claim fails for four reasons. First, the claim that counsel was ineffective for failing to request psychiatric evidence to support the reduction of his crime from murder of the first degree is an attempt to relitigate the issue of whether the evidence supported an intent to kill.

Second, a defendant must show that his brain is so damaged that he could not have premeditated or deliberated. *Commonwealth v. Miller*, 541 Pa. 531, 557–59, 664 A.2d 1310, 1323–24 (1995), *cert. denied*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). Personality disorders are not *per se* evidence of inability to premeditate. The record reflects that appellant was tried five times between 1983 and 1986 and received three mental health evaluations by court psychiatrists and a psychologist. Appellant fails to demonstrate that his claimed dysfunction rendered him incapable of premeditation.

Third, even if the issue has not been previously litigated or waived, appellant fails to demonstrate how counsel erred when appellant fails to show an entitlement to cost-free psychiatric assistance at trial. We held in *Christy, supra,* that *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) mandates state assistance only where sanity, not diminished capacity, at the time of the offense is a significant issue at trial.[18] *See also Commonwealth v. Yarris,* 519 Pa. 571, 606, 549 A.2d 513, 531 (1988). Appellant can not demonstrate that *Christy* applies, for sanity was not a significant issue at trial. Evidence of diminished capacity would not have been admissible at trial on the issue of whether the evidence met the M'Naghten test for insanity. 18 Pa.C.S. § 315; *Christy,* 540 Pa. at 203–04, 656 A.2d at 882. Thus, appellant would not have been entitled to cost-free psychiatric assistance for the purpose of an insanity defense. The record reflects no error on the part of counsel for failing to raise an insanity defense or for failing to seek cost-free psychiatric assistance during the guilt phase. These claims are meritless.

18. We need not address any issues of retroactivity here.

Fourth, similar to the preceding discussion, even if the issue has not been previously litigated or waived, appellant fails to demonstrate how counsel erred when appellant fails to show an entitlement to cost-free psychiatric assistance at the penalty phase or for his PCRA efforts. Pennsylvania's death penalty statute expressly provides for two psychologically based mitigating factors: (1) defendant was under the influence of an extreme mental or emotional disturbance at the time of the offense; and, (2) the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. 42 Pa.C.S. §§ 9711(e)(2) and (e)(3).

In *Christy*, we held that *Ake* mandates state-paid psychiatric assistance in the sentencing phase only where the assistance would be useful to rebut the prosecution's assertion, in closing or otherwise, of the defendant's "future dangerousness" to society. *Christy*, 540 Pa. at 205, 656 A.2d at 883. In appellant's case, the prosecutor offered no evidence regarding appellant's "future dangerousness." [19] *Christy* does not apply here and appellant was not entitled to cost-free psychiatric help during sentencing. Since he was entitled to no state-paid psychiatric help on direct appeal, he was not entitled to such help at the PCRA stage. Counsel was not ineffective for failing to raise these meritless claims.

Appellant next claims that trial counsel was ineffective in failing to present character testimony of his family members. This court addressed the substance of this claim when we looked at the issue of whether counsel "failed to adequately prepare a presentation regarding any mitigating circumstances." *Pirela*, 510 Pa. at 59, 507 A.2d at 31. Ineffectiveness is not demonstrated unless it shown that the alternative not chosen "offered a potential for success substantially greater than the tactics actually utilized." *Bandy, supra*, note 18. Here, appellant fails to state what reasonable

19. It is noted that "future dangerousness" is not a valid aggravating circumstance in Pennsylvania. 42 Pa.C.S. § 9711.

alternative course of conduct counsel could have chosen to appellant's benefit.

We add that had counsel presented evidence from family members of appellant's troubled childhood from family members, the Commonwealth would have been free to probe the character witnesses' knowledge of appellant's character. *Commonwealth v. Smith*, 539 Pa. 128, 134–35, 650 A.2d 863, 867 (1994), *cert. denied*, 514 U.S. 1085, 115 S.Ct. 1799, 131 L.Ed.2d 726 (1995). A defendant's effort to present evidence of a troubled childhood is not always productive as it might be viewed as an attempt to trivialize a brutal murder. *Commonweatlh v. Cross*, 535 Pa. 38, 46–47, 634 A.2d 173, 177 (1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994). Here, the failure to call family members as character witnesses in light of the potential devastating information they might reveal was neither error nor did it cause prejudice.[20]

His final ineffectiveness claim is that trial counsel was ineffective in failing to call Pedro Torres, an allegedly favorable witness, at the guilt phase of trial. This court previously rejected this claim because Torres' testimony would not have been favorable to defendant. *Pirela*, 510 Pa. at 55–56, 507 A.2d at 29.[21]

**20.** Appellant's reliance on *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705 (1994) and *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992), is unfounded. *Perry* involved a situation where counsel failed to interview: the client before trial; the only eyewitness who testified against defendant at trial, a man who had lost his left eye and suffered from glaucoma in his right eye; a second eyewitness; and character witnesses. *Weiss*, not a sentencing case, involved counsel's failure to present evidence of defendant's good character and his ex-wife's bad character, where the case turned on the credibility of the two witnesses. Neither case relates to the facts of the subject case.

**21.** There we said:

Appellant argues defense counsel was ineffective for failing to call Pedro Torres, who was present at the beating of Pablo Ortiz. Appellant asserts Pedro Torres's testimony would have corroborated appellant's own testimony. The Commonwealth counters that counsel was not ineffective for failing to call this witness on the grounds the witness had given a statement to the police that appellant struck Pablo Ortiz, threatened Pablo Ortiz with a gun, ordered the injection of Pablo Ortiz with battery acid, and ordered that Pablo Ortiz be killed and disposed of. Under the circumstances, counsel can hardly

██ Four years after trial, Torres submitted an affidavit recanting his 1982 statement implicating appellant in the murder and claiming that appellant did not hit the victim and did not order anyone to kill him. Appellant offers no evidence that Torres would have recanted before trial and fails to explain his own trial testimony that he did hit the victim. Further, appellant fails to demonstrate any error or prejudice because Torres' potential testimony would have contradicted his own testimony regarding the hitting or would have been cumulative regarding his claim he did not order the murder. The claim therefore has been previously litigated or is meritless.

██ Appellant's last claim is that the lower court erred in denying the PCRA motion in a number of respects. Appellant argues that his requests for discovery, for the funding of experts and for an evidentiary hearing were improperly denied. To obtain review of documents *in camera*, a defendant must demonstrate a reason "to believe that evidence favorable to the defense will be revealed." *Commonwealth v. Colson*, 507 Pa. 440, 462, 490 A.2d 811, 822 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). The record reflects that appellant sought, for purpose of his PCRA efforts, unlimited discovery of the records of the Pennsylvania correctional institution where he has lived since his first conviction for the purpose of obtaining proof of his inferior mental faculties. Judge Papalini conducted an *in-camera* hearing because of the extreme dangerousness of appellant and the attendant risks to the government personnel and confidential informants. The judge found nothing in the institution's files that would have been helpful to appellant and granted disclosure of those records and documents that he determined were non-confidential.

The record also reflects that appellant sought unlimited access to the records of the office of the district attorney to search for evidence favorable to him. Appellant made no showing respecting the documents the office may possess or

be ineffective for failing to call Pedro Torres to testify on behalf of appellant.

how such evidence would have helped his defense. Judge Papalini found the request was no more than a request for a "fishing expedition" and denied it.

The record reflects, therefore, that appellant was given access to certain records of the Department of Corrections and had access to the post-sentence reports prepared by the two psychiatrists concerning appellant's medical condition in 1983. None of these materials contained exculpatory material. Further, appellant fails to point to any evidence which refutes Judge Papalini's determination that the reviewed files contained nothing helpful to appellant. No error has been demonstrated.

Appellant also argues the trial court erred in denying him expert funding to pursue further psychological testing. As discussed above, appellant points to no authority that he is entitled to cost-free expert assistance at the PCRA stage.[22] This claim is without merit.

Appellant next contends the PCRA court improperly reassigned his PCRA petition to the judge in his trial. Pa.R.Crim.P. 1503 states that "[t]he trial judge, if available, shall proceed with and dispose of the motion in accordance with these rules, unless the judge determines, in the interests of justice, that he or she should be disqualified." *Commonwealth v. Kolenda,* 544 Pa. 426, 676 A.2d 1187 (1996); *Commonwealth v. Butler,* 495 Pa. 82, 89, 432 A.2d 590, 594 (1981). The party "who asserts that a trial judge must be disqualified [from PCRA proceedings] bears the burden of producing evidence establishing bias, prejudice or unfairness necessitating recusal." *Com. v. Buehl,* 540 Pa. at 514, 658 A.2d at 782 (1995). Since the reassignment followed the rule and no credible evidence of bias, prejudice or unfairness was presented, no error is demonstrated.

22. Appellant claims he is entitled to a new sentencing hearing because the PCRA court mentioned that he had committed other crimes in its discussion of his alleged entitlement to cost-free assistance. He fails to demonstrate that the other crimes were the basis of the denial of that assistance, and this claim is meritless.

■ Appellant next claims the PCRA court erred in not granting him an evidentiary hearing. Pa.R.Crim.P 1507, disposition without hearing, provides, in part, that a court may dismiss a petition for post-conviction relief without a hearing where there are no genuine issues of material fact, the defendant is not entitled to post-conviction collateral relief and no purpose would be served by further proceedings. *Butler*, 495 Pa. at 86, 432 A.2d at 592–93 (1981). Where the record reflects that the underlying claim is of no arguable merit or no prejudice resulted, no evidentiary hearing on an ineffective assistance claim is required. *Commonwealth v. Edmiston*, 535 Pa. 210, 238, 634 A.2d 1078, 1092 (1993). As demonstrated by the above, all of appellant's claims are waived or previously litigated. No purpose would be served by an evidentiary hearing. This claim is meritless.

The order of the Court of Common Pleas of Philadelphia County is affirmed.

Justice NIGRO and Justice SAYLOR concur in the result.