RESTREPO, Circuit Judge,
dissenting in part and concurring in the judgment in part.
In Simon Pirela’s 1983 capital murder case, a Philadelphia trial judge promised Pirela that if he waived his right to a jury trial, she would not impose the death penalty. Pirela agreed. The trial judge convicted Pirela, broke her promise and sentenced him to death.
Pirela was later resentenced to life imprisonment under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that it is cruel and unusual punishment to sentence an intellectually disabled person to death. Pirela now challenges his conviction in habeas corpus proceedings under 28 U.S.C. § 2254. Pirela alleges that the trial judge induced him to waive his right to a jury trial, in violation of the Sixth and Fourteenth Amendments of the United States Constitution. Because I believe that Pirela is entitled to an evidentiary hearing on this claim, I respectfully dissent.[1]
I
Pirela’s jury trial waiver claim arises from a pretrial hearing in his capital murder case in the Philadelphia Court of Corn-mon Pleas. At this hearing, Pirela’s defense counsel tried to elicit a concession, either from the trial judge or from the Commonwealth, that Pirela was not subject to the death penalty because he would be tried as a conspirator only. The following exchange then took place between the trial judge and defense counsel:
The Court: How can I rulé on that? I haven’t heard any evidence and I don’t see how Mr. Byrd [the assistant district attorney] can make a representation. The witnesses may get up from there and say something different than what he thinks they are going to say...,
Defense Counsel: ... The important thing about it is this: He’s not subject to the death penalty if he is not deemed to be the doer, or the actor of the murder, or the aggravating circumstances.

The Court: Why are you arguing all this? Didn’t you say it was going to be a waiver [a non-jury trial]?

Defense Counsel: That’s correct.

The Court: He’s not subject to the death penalty as long as he has me for a Judge.

App. 219-20 (emphasis added).
Pirela waived his right to a jury trial three days later.[2] Pirela completed an oral, guilt-phase waiver colloquy, which included no mention of the trial judge’s promise that she would not sentence him to death. Nor did the guilt-phase waiver colloquy advise Pirela that he could still be sentenced to death after a non-jury trial. The trial judge did ask Pirela generally,. “Has anyone promised you anything to get you *84 to waive a trial by jury,” to which Pirela answered “No.” App. 238.
Pirela proceeded to a non-jury trial before the trial judge, who convicted Pirela. She sentenced him to death. As the majority describes in greater detail, Pirela subsequently filed a direct appeal and a first petition for collateral relief under what is now entitled the Post-Conviction Relief Act (PCRA). In his first PCRA petition, Pirela alleged that his guilt-phase jury trial waiver was induced by the trial judge’s promise not to sentence him to death.
In support of his first PCRA, Pirela submitted affidavits. The affidavits of Pire-la and defense counsel both stated that the trial judge’s promise induced Pirela to waive his right to a jury trial. Pirela also argued, in the same jury trial waiver claim, that he was particularly susceptible to the trial judge’s misrepresentation because of his mental impairments, which prevented him from understanding “the nature of the fundamental right he was waiving.” App. 1002. Pirela provided records establishing that he has a third grade education, is a non-English speaker, is illiterate in his own language, Spanish, has had lifelong problems with understanding, communication and memory, and, according to a doctor, has a “subnormal intellect.” App. 346.
Pirela requested an evidentiary hearing in his first PCRA, which the trial court denied.[3] The trial court denied relief, and the Pennsylvania Supreme Court affirmed. Commonwealth v. Pirela (Pirela II), 556 Pa. 32, 726 A.2d 1026, 1031-32 (1999).
Pirela later filed a second PCRA petition challenging his death sentence under Atkins v. Virginia. In 2004, the trial court vacated Pirela’s death sentence after finding that Pirela is intellectually disabled. The Pennsylvania Supreme Court affirmed. Commonwealth v. Pirela, 593 Pa. 312, 929 A.2d 629 (2007) (per curiam).[4]
Presently before this court is Pirela’s habeas corpus petition.[5] Pirela again asserts that the trial judge induced him to waive a jury trial by promising not to sentence him to death. In support of this claim, Pirela argues that he was particularly susceptible.to the trial judge’s promise because he is severely mentally impaired, illiterate and a non-English speaker. To clarify, Pirela raises these arguments as a single claim.
It is the majority that divides Pirela’s claim in two. It considers separately: (i) whether the trial judge’s promise induced Pirela to waive a jury trial and (ii) whether Pirela’s mental impairments rendered him incapable of a knowing and voluntary waiver. But Pirela refers to his mental impairments to support the claim that his jury trial waiver was induced. I believe the majority’s approach does Pirela a disservice. It carves out Pirela’s mental impairments as a supposed second claim, and thereby sets these facts aside. This makes *85 it easier for the majority to reject Pirela’s claim that his waiver was induced, but it is not how Pirela pled his case.
Pirela requests an evidentiary hearing on his habeas corpus petition and argues that the trial court improperly denied a hearing on his first PCRA. The District Court denied Pirela’s request for an evi-dentiary hearing, and denied relief. This Court granted a certificate of appealability because “[jjurists of reason would debate the correctness of the District Court’s conclusion.” App. 93.
II
Pre-AEDPA habeas corpus review involves, in relevant part, two related but distinct questions. First, we ask whether a habeas petitioner is entitled to an eviden-tiary hearing in federal court. Second, we ask whether the federal court is bound by state court fact-findings under 28 U.S.C. § 2254(d) (1966). As a leading treatise explains, a court should approach these questions “sequentially].” 1-20 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 20.2(d) (7th ed. 2016). Specifically, we should determine first, whether a defendant is entitled to an evidentiary hearing. Only then should we “reach[ ] the latter issue,” whether a presumption of correctness applies under Section 2254(d), having considered “all the relevant evidence, including evidence that may have been adduced at a federal hearing.” Id.
In Pirela’s case, the District Court denied habeas corpus relief without an evi-dentiary hearing. Therefore, I approach this case by asking whether an evidentiary hearing is warranted in federal court, I follow this Court’s standard, pre-AEDPA analysis, set forth in Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 (3d Cir. 1991). “First, we must determine whether the petitioner has alleged facts that, if proved, would entitle him to relief. If so, we must then decide whether an evidentiary hearing is necessary to establish the truth of those allegations.” Id. (citations omitted).[6]
The majority takes a different approach to Pirela’s case. It focuses on whether the state court findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1966). I believe it is premature to make this determination. Pirela should first be given an opportunity to rebut the state court fact-findings at an evidentiary hearing. See 28 U.S.C. § 2254(d) (1966) (allocating to the petitioner the burden of rebutting state court factual determinations).[7]
Ill
In the first step of the Zettlemoyer analysis, I ask whether Pirela has alleged facts that, if proven, would entitle him to relief *86 for the violation of his constitutional right to a jury trial. I believe he has.
A
The Sixth and Fourteenth Amendments of the United States Constitution guarantee the right to a jury trial. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). This “guarantee[ ] ... reflect[s] a profound judgment about the way in which law should be enforced and justice administered.” Id. at 155, 88 S.Ct. 1444. “If the defendant prefer[s] the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he [is] to have it.” Id. at 156, 88 S.Ct. 1444. “The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as ‘structural error,’ ” not subject to harmless error analysis. Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
Although a defendant may waive the right to a jury trial, such a waiver is only valid if made knowingly, intentionally and voluntarily. Adams v. United States ex rel. McCann, 317 U.S. 269, 277-78, 63 S.Ct. 236, 87 L.Ed. 268 (1942); see also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (“A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.”). A waiver is invalid if “induced by threat[,] ... misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper.” Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (citation omitted). “[C]ases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant’s expectations as to his sentence are predicated upon promises by the Government or statements from the court.” United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976) (citation omitted). “Where the record shows that ‘circumstances as they existed at the time of the [jury trial waiver], judged by objective standards, reasonably justified his mistaken impression,’ a defendant must be held to have entered his [waiver] without full knowledge of the consequences and involuntarily.” Id. (citation omitted).
A petitioner who claims that his jury trial waiver was invalid “faces a heavy burden” on habeas review. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). This is because there will ordinarily be an on-the-record waiver colloquy, which is a “formidable barrier” to relief. Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). But this barrier is not “insurmountable.” Id. We have repeatedly held that a waiver may be involuntary, even where there was a colloquy. See, e.g., Dickerson v. Vaughn, 90 F.3d 87, 91-92 (3d Cir. 1996) (granting writ of habeas corpus); Zilich, 36 F.3d at 323 (remanding for evidentiary hearing); Heiser v. Ryan, 951 F.2d 559, 562 (3d Cir. 1991) (same); Lesko v. Lehman, 925 F.2d 1527, 1540 (3d Cir. 1991) (same); United States v. Marzgliano, 588 F.2d 395, 398-400 (3d Cir. 1978) (same).
B
Pirela alleges facts that, if proven, would entitled him to relief. There are two factual predicates for Pirela’s claim that his jury trial waiver was invalid: (1) that the trial judge promised Pirela that if he waived his right to a jury trial, she would not sentence him to death and (2) that the trial judge’s promise induced Pirela to waive a jury trial. I address each factual allegation in turn.
*87 l
First, Pirela alleges that the trial judge promised that if he waived his right to a jury trial, she would not sentence him to death. This is an unusual case. Pirela does not contend that the trial judge made an off-the-record and unverifiable promise. To the contrary, the trial judge unquestionably said of Pirela, on the record, in open court: “He’s not subject to the death penalty as long as he has me for a Judge.” App. 220 (emphasis added). This is “sufficient objective proof on the record in statements by the ... [trial] judge to support [Pire-la’]s claim that he misunderstood the maximum sentence he faced.” Crusco, 586 F.2d at 24-25.
The majority claims that “there is no record evidence supporting Pirela’s interpretation” that the trial judge made a promise predicated upon a waiver of his right to a jury trial. I disagree. The “record evidence” is the trial judge’s own words.
Despite the plain meaning of the trial judge’s statement, the Pennsylvania Supreme Court found that her statement “appears not to constitute a ‘guarantee’ that [Pirela] would not be sentenced to death.” Commonwealth v. Pirela (Pirela I), 510 Pa. 48, 507 A.2d 23, 28 (1986). That is, it found that what the trial judge said is not what she meant. The trial judge said, “He’s not subject to the death penalty as long as he has me for a Judge.” App. 220. According to the state court, what she meant was that she would not impose the death penalty “if the evidence proved the facts to be as represented by defense counsel during his motion.” Pirela I, 507 A.2d at 28.
The state court derived its alternative interpretation from the “context.” Id. at 53. However, its description of the context is inaccurate. Specifically, the context for the trial judge’s statement was an argument by defense counsel — that if the facts were as he proffered, a death sentence would be legally unavailable. The state court’s description of the context is different — that if the facts were as he proffered, the death penalty would be legally available, but the trial judge would choose not to impose it.[8] Thus, I would hold that Pirela has adequately alleged the first factual predicate for his claim that his jury trial waiver was invalid.
2
The second factual predicate for Pirela’s claim is that the trial judge’s promise induced him to waive a jury trial. Pirela supports this factual allegation primarily with two affidavits. Pirela himself avers that he decided to waive his right to a jury trial “because I believed that if I did so, [the trial judge] would not sentence me to death; I believed this because both the interpreter and my attorney, [defense counsel], told me that [the trial judge] had made this promise in court.” App. 222-23. Defense counsel avers that “[a]t the time [the trial judge] made the promise ... that she would not sentence Mr. Pirela to death, Mr. Pirela and I had not yet reached a final decision that he would waive his right to a jury for the guilt/innocence” phase. App. 229. Defense counsel further avers that he “recommended that based on [the trial judge]’s promise, [Pire-la] should waive his right to a jury trial and rely on the judge’s promise.” Id.
These affidavits, of course, have not been subjected to the crucible of cross- *88 examination. Below I discuss some of the obstacles Pirela would face at an evidentia-ry hearing. However, the question at this stage of the Zettlemoyer analysis is “whether the petitioner has alleged facts that, if proved, would entitle him to relief.” Zettlemoyer, 923 F.2d at 291. He has. Assuming that the trial judge’s promise induced Pirela to waive his constitutional right to a jury, the waiver “would not be voluntary, and .... may be collaterally attacked.” Lesko, 925 F.2d at 1538 (citations omitted).
iy
The next question in the Zettlemoyer analysis is “whether an evidentiary hearing is necessary to establish the truth of [Pirela’s] allegations.” Zettlemoyer, 923 F.2d at 291.[9] I would hold that an evidentiary hearing is necessary. Specifically, I believe an evidentiary hearing is necessary to determine whether the trial judge’s promise induced Pirela to waive a jury trial.[10]
A
Whether Pirela is entitled to an eviden-tiary hearing in federal court is based upon the pre-AEDPA standard of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Under Townsend, “the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a fall and fair eviden-tiary hearing in a state court, either at the time of the trial or in a collateral proceeding” on a factual dispute material to his claim. Id. at 312, 83 S.Ct. 745 (emphasis added). “In other words a federal evidentiary hearing is required unless the state-court trier of fact has'after a full hearing reliably found the relevant facts.” Id. at 312-13, 83 S.Ct. 745 (emphasis added).[11]
Townsend specified six situations where a hearing is mandatory. These are where:
(1) the merits of the factual dispute were not resolved in the state hearing;
(2) the state factual determination is not fairly supported by the record as a whole;
(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing',
(4) there is" a' substantial allegation of newly discovered evidence;
(5) the material facts were not adequately developed at the state-court hearing; or
(6) for any reason it appears that the state trier of fact did not afford the *89 habeas applicant a full and fair fact hearing.
Id. at 313, 83 S.Ct. 745 (emphasis added).
B
The majority concludes that none of the Townsend scenarios apply to Pirela. In contrast, I would hold that the state court fact-finding was inadequate for three reasons: “the state factual determination is not fairly supported by the record as a whole,” “the fact-finding procedure employed by the state court was not adequate” and “the material facts were not adequately developed at the state-court hearing.” Id.[12]
1
First, I would hold that the state court’s factual determination was not fairly supported by the record. The Pennsylvania Supreme Court found that Pirela decided to waive a guilt-phase jury trial “prior to” the trial judge’s promise and, therefore, was not induced by it. Pirela I, 507 A.2d at 28; Pirela II, 726 A.2d at 1031 n.9. As a starting point, this fact-finding is contradicted by affidavits, from Pirela and defense counsel. These affidavits state that the trial judge’s promise did induce Pirela to waive a jury trial.
Furthermore, the evidence the majority examines to evaluate the state court’s fact-finding does not undercut Pirela’s assertion that the trial judge’s promise induced him to waive a jury trial. This evidence is primarily (i) a statement by Pirela’s defense counsel; (ii) the timing of the trial judge’s promise; and (iii) Pirela’s guilt-phase waiver colloquy. I address each in turn.
First, like the state court, the majority examines a statement by defense counsel at the pre-trial hearing. Defense counsel agreed — before the trial judge made her promise — that the case was “going to be a waiver.” App. 220. From this statement, the majority infers that “the parties fully understood that Pirela would waive the jury right.” The problem with this inference is that these were counsel’s words, not Pirela’s. From defense counsel’s words, one can only make assumptions about Pirela’s own mindset. These assumptions cut both ways. On one hand, defense counsel might have been speaking for Pirela, who had already decided to waive a jury trial. On the other hand, defense counsel might have been stating his own preference for a non-jury trial.[13] Either way, defense counsel’s words are not dispositive because it was Pirela’s choice whether to waive a jury trial, and he did not speak. Taylor v. Illinois, 484 U.S. 400, 418 n.24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); see also Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); cf. United States v. Brown, 849 F.3d 87, 91 (3d Cir. 2017) (holding that the defendant and “not just his counsel” must knowingly waive an objection to dual juries).
Second, the majority considers the timing of the trial judge’s promise. When the trial judge made her promise, trial was imminent.[14] Yet again, the timing could support two, conflicting assumptions. The majority assumes that Pirela must have “made up his mind” to waive a jury trial because the trial was scheduled to start so *90 soon. Alternatively, one could reasonably assume that some defendants wait until the last possible moment to commit to waiving the jury trial right. See Duncan, 391 U.S. at 158, 88 S.Ct. 1444 (observing, that “a great many defendants prefer the judgment of a jury to that of a court”). Indeed, the trial judge’s promise might have had an especially great impact on Pirela because it came at the eleventh hour — precisely the time when Pirela would have been forced to make a final decision about whether to waive a jury trial or not.
Third, the majority examines Pirela’s guilt-phase waiver colloquy. Again, this is not dispositive. During this colloquy, Pirela never said that he decided to waive a jury trial irrespective of trial judge’s promise. There was no mention of her promise at all. Moreover, Pirela offers a plausible explanation for why he agreed generally that there had been no promises — he did not believe the trial judge was asking about herself. This explanation is reasonable. The trial judge asked Pirela, “Has anyone promised you anything to get you to waive a trial by jury?” App. 238. The form of this question implies that the person asking (the trial judge) is not referring to herself. Moreover, the trial judge holds a position of authority; this implies that her role is to ferret out others’ impropriety, not her own. Marzgliano, 588 F.2d at 399 (observing that “most defendants could be expected to deny ‘any impropriety,’” especially involving the trial judge) (citation omitted). On top of this, Pirela would have had particular difficulty understanding the trial judge’s question because he is both mentally-impaired and a non-English speaker. Cf. United States v. Shorty, 741 F.3d 961, 969 (9th Cir. 2013) (holding that a defendant’s “low I.Q. and learning disability undoubtedly made it more difficult for him ... to follow courtroom discussions”).
Thus, for all of these reasons, I believe that “the state factual determination is not fairly supported by the record as a whole.” Townsend, 372 U.S. at 313, 83 S.Ct. 745. I would remand to the District Court for an evidentiary hearing.
2
In the alternative, I would hold that Pirela is entitled to an evidentiary hearing because the “the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing.” Id. State court proceedings may be inadequate where, inter alia, “[a] state appellate court purported to make findings of fact ... by implicitly ... making demeanor or credibility judgments of a type not within the competence of appellate judges.” Hertz & Liebman, supra, § 20.3(d)(4). “Where an unresolved factual dispute exists, demean- or evidence is a significant factor in adjudging credibility. And questions of credibility, of course, are basic to resolution of conflict^ in testimony.” Townsend, 372 U.S. at 322, 83 S.Ct. 745. Where the merits of a habeas petitioner’s claim “require credibility determinations that cannot be resolved by review of the cold record, the district court must give him an evidentiary hearing.” Zilich, 36 F.3d at 323 (citation omitted) (remanding for an evidentiary hearing on claim that the petitioner’s guilty plea was induced by defense counsel’s promise to bribe the trial judge).
In Pirela’s case, the Pennsylvania Supreme Court found on direct appeal that Pirela decided to waive a jury trial “prior to” the trial judge’s promise. Pirela I, 507 A.2d at 28. The Pennsylvania Supreme Court repeated this finding on post-conviction review. Pirela II, 726 A.2d at 1031 n.9. Appellate review was inadequate to make such a finding of fact. To the contrary, whether Pirela decided to waive a jury trial “prior to” the trial judge’s promise *91 requires a credibility determination. Pirela avers that he decided to waive his right to a jury trial because he “believed that if I did so, [the trial judge] would not sentence me to death; I believed this because both the interpreter and my attorney, [defense counsel], told me that [the trial judge] had made this promise in court.” App. 222-23. Defense counsel concurs. I would remand so that the District Court can determine whether these statements are credible.
3
There is yet a third independent reason under Townsend for granting an evidentia-ry hearing: “the material facts were not adequately developed at the- state-court hearing.” Townsend, 372 U.S. at 313, 83 S.Ct. 745. Heiser v. Ryan illustrates this Tovmsend scenario. 951 F.2d at 562. In Heiser, a petitioner alleged that his guilty plea was coerced by defense counsel’s threat that if the petitioner did not plead guilty, counsel would withdraw from the case. Id. at 561. The petitioner’s claim was undercut by his statement at a guilty plea colloquy that his plea was not the product of force or threats. Id. at 562. Nevertheless, this Court held that the colloquy could not take the place of an evidentiary hearing on the petitioner’s allegation because the colloquy consisted of “yes-and-no answers to broad and general questions.” Id. An evidentiary hearing was necessary under Townsend because, inter alia, “the material facts were not adequately developed at the state-court [plea] hearing.” Id. at 562 (quoting Townsend, 372 U.S. at 313, 83 S.Ct. 745).
In Pirela’s case, as in Heiser, the material facts were not adequately developed in a state court hearing. Specifically, the state court did not determine, inter alia, any of the following facts: (i) whether defense counsel spoke for Pirela when he stated, before the trial judge’s promise, that the case was “going to be a waiver,” ■ App. 220; (ii) whether Pirela had “made up his mind,” to waive a jury trial before the trial judge’s promise because his trial date was imminent; or (iii) whether Pirela understood during his guilt-phase waiver colloquy that the trial judge was asking about her own promise, when she asked Pirela if any promises had been made to him. The state court did not develop any of these facts. For this reason also, I would remand to the District Court for an evidentiary hearing.
I respectfully dissent.

. I concur in the judgment of the majority denying Pirela’s ineffective assistance of counsel claim.

. The trial judge made her promise on a Friday, and Pirela waived his right to a jury trial on the following Monday.

. The trial court held an evidentiary hearing only "to preserve the testimony of [Pirela]’s aged mother,” App. 442. The trial court denied an evidentiary hearing in all other respects.

. In a hearing on Pirela’s second PCRA, a radiologist and expert in brain pathology provided testimony that Pirela has "significant organic brain damage ... consistent with a diagnosis of mental retardation.” App. 4612. A neuropsychologist who tested Pirela in Spanish, “placed Pirela’s IQ at 57” and his academic ability “in the kindergarten to first grade level.” App. 4611-12. Lay witnesses further testified that Pirela was born with the umbilical cord wrapped around his neck; suffered numerous serious falls as a child; was in special education classes; and could never understand simple instructions.

.Pirela originally filed his habeas coipus petition in 1990; it was placed in suspense in 1992 while Pirela exhausted his state court remedies.

. Because the District Court denied relief without an evidentiary hearing, the standard of review is plenary. Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282, 287 n.3 (3d Cir. 2005).

. Even if I were to begin with Section 2254(d), I would hold that the state court findings of fact are not entitled to a presumption of correctness. There are eight enumerated exceptions to the presumption of correctness, 28 U.S.C. §§ 2254(d)(1-8) (1966); see also Jefferson v. Upton, 560 U.S. 284, 293, 130 S.Ct. 2217, 176 L.Ed.2d 1032 (2010) (per curiam). For the reasons below, I believe that the state court findings of fact are not entitled to a presumption of correctness under three subsections; where "the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing”; where "the applicant did not receive a full, fair, and adequate hearing in the State court proceeding”; and where the "factual determination is not fairly supported by the record.” 28 U.S.C. §§ 2254(d)(2), (6), (8) (1966),

. I note that Pirela is a mentally impaired, illiterate, non-English speaker, upon whom the context was almost certainly lost.

. Before obtaining an evidentiary hearing, a habeas corpus petitioner must overcome summary dismissal. Blackledge, 431 U.S. at 76, 97 S.Ct. 1621. A petitioner must provide more than "conclusory allegations unsupported by specifics” or "contentions that in the face of the record are wholly incredible.” Id. at 74, 97 S.Ct. 1621. Pirela has alleged far more. His allegations are detailed and specific; they are supported by the record of the. pre-trial hearing and by affidavits. Thus, summary dismissal is not warranted. See, e.g., Lesko, 925 F.2d at 1538.

. An evidentiary hearing is not necessary as to the other factual predicate for Pirela’s claim — that the trial judge promised not to sentence him to death if he waived a jury trial. I believe this fact is established by the trial judge’s own statement, "He’s not subject to the death penalty as long as he has me for a Judge,” App. 220.

.An evidentiary hearing is not required where the failure to present evidence in state court was petitioner’s own failure, unless, inter alia, the failure is excusable for cause and prejudice, or because "a fundamental miscarriage of justice would result.” Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Tamayo-Reyes is inapplicable to Pirela because the failure to present evidence was not "the fault of the petitioner.” Cristin v. Brennan, 281 F.3d 404, 415 (3d Cir. 2002).

.Unlike the majority, I would hold that the latter two Townsend scenarios were adequately raised in Pirela's habeas corpus petition, which asserts that the state courts improperly denied him an evidentiary hearing on his first PCRA.

. Defense counsel might have preferred a non-jury trial, either for his own expedience or because he believed it was in Pirela’s best interest,

. I assume that no one contemplated a continuance.