851 A.2d 883

COMMONWEALTH of Pennsylvania, Appellee

v.

Stephen Rex EDMISTON, Appellant.

Supreme Court of Pennsylvania.

Submitted Dec. 14, 2000.

Decided June 22, 2004.

Reconsideration Denied Aug. 18, 2004.

Yvonne R. Bradley, Philadelphia, for Stephen Rex Edmiston, appellant.

Stuart B. Suss, West Chester, Amy Zapp, Harrisburg, for the Com. of PA, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION OF THE COURT

Justice CASTILLE.

Appellant appeals the denial of his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* Because we find that appellant is not entitled to relief, we affirm the order of the PCRA court.

In October of 1988, appellant raped and murdered the two-year-old child victim in a particularly gruesome fashion. Appellant scalped the child by cutting with a sharp knife from one of her ears across her front hair line to her other ear and peeling back her scalp to the nape of her neck, thereby exposing her skull. Appellant also inflicted blunt force trauma to the child's chest and stomach which was sufficient to tear her liver and lungs. That force may also have been the cause of two feet of the child's intestines protruding from her genital area, but it is also possible that appellant simply pulled the girl's intestines out of her body through her genital area. Appellant ripped the child's genital area to such an extent that there was one large bloody cavity in the area of her vaginal and anal orifices. Appellant burned the child's body, inflicted numerous lacerations, and fractured her skull. All of these injuries occurred while this child was still alive. Appellant then took the child to an isolated area of a state forest in Cambria County where he hid her corpse. Appellant confessed his acts to the police, and drew a map for them which led to the discovery of the child's decayed body.

On July 14, 1989, following a non-jury trial, appellant was convicted of first-degree murder, rape, statutory rape and involuntary deviate sexual intercourse. The trial court then impaneled a capital sentencing jury. On October 5, 1989, following a penalty hearing, the jury found two aggravating circumstances and one mitigating circumstance, determined that the aggravators outweighed the mitigator, and according-

ly, returned a sentence of death on the murder charge. The trial court formally sentenced appellant to death and, in addition, sentenced him to consecutive terms of imprisonment of ten to twenty years each for rape and involuntary deviate sexual intercourse, as well as a concurrent term of five to ten years of imprisonment for statutory rape. This Court affirmed on direct appeal. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993) (*Edmiston I*).

Appellant was represented at both the guilt and penalty phases of trial by attorneys David Weaver, Esq., David Kaltenbaugh, Esq., and Kenneth Sottile, Esq., of the Cambria County Public Defenders' Office, who subsequently filed post-trial motions on his behalf. In supplemental post-trial motions, however, appellant requested that his counsel be discharged. The trial court granted the request and appointed Robert Gleason, Esq., and Arthur McQuillan, Esq., who represented appellant throughout the post-trial proceedings, including filing and briefing appellant's direct appeal to this Court. John Elash, Esq., was then hired by appellant's mother to argue the direct appeal. Attorney Elash filed a supplemental brief and argued appellant's direct appeal.

On May 29, 1996, appellant filed a *pro se* PCRA petition and the PCRA court appointed new counsel to represent him.[1] Appellant requested that attorneys from the Center for Legal Education, Advocacy and Defense Assistance (CLEADA) be permitted to represent him instead of the attorneys appointed by the court. The PCRA court excused appointed counsel and granted appellant's request.[2] Counsel then filed amended PCRA petitions on October 27, 1997 and September 1, 1998.

1. The timeliness of appellant's PCRA petition is uncontested, given that his original petition was filed within the time parameters established by the 1995 amendments to the PCRA, requiring an individual, like appellant, whose judgment became final before the amendments' effective date (January 16, 1996) to file within one year of that effective date. *See* 42 Pa.C.S. § 9545.

2. Then–CLEADA counsel, Robert Brett Dunham, Esq., and Billy Nolas, Esq., entered their appearance for appellant. When CLEADA ceased operating, appellant's attorneys became affiliated with Defender Association of Philadelphia, Capital Habeas Corpus Unit. Appellant's briefs on this appeal were filed by Jerome Nickerson, Jr., Esq., Yvonne Bradley,

The PCRA court held evidentiary hearings on October 21 and December 16, 1998, at which it heard from trial counsel and also entertained oral argument. The court ultimately denied relief and this appeal followed.

Appellant raises thirteen principal claims, with some of those issues including subparts. Many of the claims are waived for failure to raise them on direct appeal or before the PCRA court, and several of the claims have been previously litigated. A few of the claims are both waived and previously litigated. In addition, appellant raises some "layered" claims of ineffective assistance of counsel; the proper approach to such claims has recently been addressed in this Court's decisions in *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651 (2003) and *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003).

We begin with those claims which are not reviewable because their substance was already reviewed by this Court on direct appeal. A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). In light of the PCRA's previous litigation bar, we agree with the PCRA court that appellant is not entitled to relitigate the question of whether he was denied due process when the trial court and the prosecution failed to disclose the contents of "social service" records from Clearfield Youth Services files concerning the victim and her family (Argument III). Those records were examined by the trial court *in camera* before trial and the court determined that they contained no exculpatory evidence. Appellant claims that the issue of his entitlement to those records was not decided on direct appeal, but he is mistaken. In the supplemental brief filed in that appeal, appellant claimed that his trial counsel were ineffective in failing to review the Children and Youth Services files for evidence helpful to his defense. This Court rejected the claim on the merits, along with the other claims raised in that

Esq., and Attorney Dunham, all of the Defender Association of Philadelphia.

supplemental brief. *Edmiston I,* 634 A.2d at 1092–93 & n. 4. Under this Court's settled precedent, the fact that appellant now poses the claim as one sounding under due process and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *i.e.,* as a deficiency in the government's production of the privileged evidence, rather than under a theory of counsel's deficiency in failing to secure the same evidence, does not remove the statutory previous litigation bar. *Commonwealth v. Jones,* 571 Pa. 112, 811 A.2d 994, 1000 (2002) (citing cases); *Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978, 983 (2002).[3]

This Court also cannot review appellant's renewed claim that the trial court provided a constitutionally defective instruction on the aggravating circumstance of torture (Argument X) because we held on direct appeal that the jury was properly instructed on this circumstance. *Edmiston I,* 634 A.2d at 1091. Appellant does not address, much less dispute, the PCRA court's previous litigation finding as to this claim.[4] Nor may we review the multiple claims of ineffective assistance of trial counsel raised in Argument IV as all three claims were raised in the supplemental brief filed on appellant's direct appeal and were rejected by this Court. *Id.* at 1092.[5]

3. Even were we to review the merits of the *Brady* claim, appellant's argument is unavailing because appellant has no right to conduct a fishing expedition for possibly exculpatory evidence, particularly where, as here, the trial court examined the records and determined that they would provide no exculpation. Indeed, the United Stated Supreme Court determined in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), that a defendant seeking precisely the type of records appellant sought is entitled only to an *in camera* inspection by the trial court, which the trial court here performed. Further, we have held that a defendant has no general right under the Constitution or *Brady* to search Commonwealth files. *See, e.g., Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167, 1176 (1999).

4. In any event, appellant concedes that the instruction is consonant with Pennsylvania law, noting that "this Court has rejected identical claims in the past." Brief of Appellant at 96 n. 47. Apparently, counsel burdens this Court with the frivolously redundant claim only in an equally redundant attempt to preserve it for federal habeas corpus review. *Id.*

5. The three claims are that trial counsel failed to: (1) utilize evidence in support of appellant's chosen defense, which included attacking irregu-

The PCRA court also denied as previously litigated appellant's claim (Argument IX, subpart B) that the prosecutor made improper comments in his penalty phase opening statement about appellant's possible penalty phase testimony, thereby burdening appellant's Fifth Amendment privilege against self-incrimination. This claim was explicitly rejected on direct appeal. *Id.* at 1089. Appellant acknowledges that he is seeking to relitigate the claim under the guise of one sounding in the ineffectiveness of direct appeal counsel.

Appellant argues that, in rejecting his claim on direct appeal, this Court erred to the extent it broadly stated that the privilege against self-incrimination "has no direct application to a determination of the proper sentence to be imposed because the presumption of innocence which accompanies the accused throughout the proceedings to determine his guilt has no direct application to the sentencing determination." *Id.* at 1089 (citing Pennsylvania case law). Citing *Estelle v. Smith,* 451 U.S. 454, 462–63, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) ("We can discern no basis to distinguish between the guilt and penalty phases of [a] capital murder trial so far as the protection of the Fifth Amendment privilege is concerned."), appellant argues that this was an incorrect statement of federal law. Appellant then argues that direct appeal counsel were ineffective for failing to argue *Estelle* to this Court as controlling authority.

In *Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 410 (2003), this Court recognized that the statement of the scope of the privilege found in *Edmiston I* and like Pennsylvania cases is erroneous as a Fifth Amendment matter, and that *Estelle* controls that federal question. Nevertheless, that fact does not entitle appellant to relief or to relitigate his claim. Appellant inexplicably fails to acknowledge that, although this Court indeed suggested on the direct appeal in *Edmiston I* that the Fifth Amendment privilege has no "direct application"

larities in the police investigation; (2) present DNA evidence, and (3) impeach the victim's father. The first two claims are also waived because appellant failed to raise them in his PCRA petition below. Pa.R.A.P. 302(a); *Jones,* 811 A.2d at 1003–04.

to the sentencing phase, we did not reject the claim upon that ground, much less was that the exclusive ground for decision. To the contrary, we explicitly found that "the prosecutor's opening statement related solely to the appellant's admissions to the troopers about his alleged intoxication and did not relate to his decision to testify in the penalty phase." 634 A.2d at 1090. In addition, we noted that the court's instructions, issued after counsel lodged a timely objection, "removed any prejudice resulting from the statements." *Id.* Hence, this claim was, is and remains previously litigated.

One additional claim is defaulted under Pennsylvania law because appellant failed to raise it in his PCRA petition and amendments. Claims not raised in the PCRA court are waived and cannot be raised for the first time on appeal to this Court. Pa.R.A.P. 302(a); *Commonwealth v. Bond,* 572 Pa. 588, 819 A.2d 33, 52 (2002) ("[p]ermitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA."); *Jones,* 811 A.2d at 1003–04 (citing cases). The proper vehicle for raising new claims is not on PCRA appeal, but rather in a subsequent PCRA petition, should appellant be able to satisfy the statutory restrictions on such serial filings. *Bond; see also Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 587–88 (2000). The claim waived under Rule 302 is that appellant was sentenced to death by jurors who improperly presumed that, if convicted, appellant should be sentenced to death, thereby placing the burden on appellant to convince the jurors to reduce his sentence from death to life (Argument VII).

We turn next to appellant's layered claims of ineffective assistance of counsel. Since appellant was represented by counsel other than trial counsel on his direct appeal, and the appeal was decided before this Court's decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002),[6] any claim

---

**6.** *Grant* overruled the procedural rule announced in *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), which required that claims of counsel ineffectiveness be raised on direct appeal where the defendant is represented by new counsel and established a new general rule

sounding in trial court error or ineffective assistance of trial counsel which appellant would pose at this time is waived under the terms of the PCRA. *See* 42 Pa.C.S. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); *see also Rush,* 838 A.2d at 660. However, claims sounding in the alleged ineffective assistance of direct appeal counsel, including "layered" claims that appellate counsel was ineffective for failing to challenge the effectiveness of previous counsel, are not waived under the PCRA's previous opportunity standard, since the PCRA proceeding below represented appellant's first opportunity to challenge the effectiveness of his direct appeal counsel. Although appellant does not **develop** any of his claims as claims of appellate counsel ineffectiveness, he does set forth, as Argument XIII of his brief, a global, albeit boilerplate, pleading of "layered" ineffectiveness:

> Trial counsel was ineffective for failing to object to and properly litigate the trial errors described herein, and for failing to seek appropriate court instructions and action. Appellate counsel was ineffective for failing to raise and properly litigate each and all of the claims presented herein. Prior counsel had no reasonable basis for this prejudicial performance. These failures denied Appellant the effective assistance of counsel, in violation of the Sixth Amendment and Article I, Section 9.

Brief of Appellant at 100. Appellant raised the layered claim in a similarly boilerplate and global fashion in his PCRA pleadings. The PCRA court rejected the claim, citing the *Strickland/Pierce*[7] standard, and noting that it had found

that claims of counsel ineffectiveness should wait until PCRA review. 813 A.2d at 738. In *Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 393 (2003), this Court applied the *Grant* rule in a direct capital appeal. By its terms, *Grant* has "no effect on cases currently pending on collateral review." *Grant,* 813 A.2d at 739 n. 16.

7. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

appellants underlying claims lacking in merit. PCRA court slip op. at 14.

Six of appellant's underlying and developed claims of trial court error and/or ineffective assistance of trial counsel arguably are captured by this boilerplate pleading of layered ineffectiveness: (1) the claim that trial counsel were ineffective in failing to conduct a reasonable investigation into appellant's background, including mental health issues, and for failing to present such evidence as additional mitigation evidence (Argument II); (2) the claim that appellant was denied due process when the trial court improperly remarked on his credibility at the penalty phase and trial and subsequent counsel were ineffective in failing to object (Argument V); (3) the claim that appellant was denied his rights to direct appeal "and a variety of related . . . rights" when the trial court failed to produce and trial counsel failed to request transcripts of the *voir dire* proceedings (Argument VI); (4) the claim that the trial court erred in failing to instruct the sentencing jury that, if sentenced to life imprisonment, appellant would be ineligible for parole (Argument VIII); (5) the claim that the prosecutor repeatedly misstated the law during his penalty phase summation when discussing appellants intoxication evidence and counsel were ineffective for failing to object (Argument IX, subpart A); and (6) the claim that the prosecutor improperly questioned appellant at the penalty phase concerning his prior arrest, trial and acquittal of sexual assault and molestation charges involving his adopted daughter (Argument IX, subpart C).

Although appellant's boilerplate layered pleading invokes both the federal Constitution and the Pennsylvania Constitution, he does not presently argue (although he did summarily argue below) that the test for counsel ineffectiveness differs under the two charters. In any event, it is settled that the test is coterminous: it is the performance and prejudice paradigm set forth by the U.S. Supreme Court in its seminal decision in *Strickland*. *See, e.g., Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 855 (2003); *Bond,* 819 A.2d at 41–42; *Commonwealth v. Busanet,* 572 Pa. 535, 817 A.2d 1060,

1066 (2002); *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 524 (2001); *Pierce,* 515 Pa. 153, 527 A.2d 973. *Accord Rompilla v. Horn,* 355 F.3d 233, 246–50 (3d Cir.2004); *Werts v. Vaughn,* 228 F.3d 178, 203 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). To better focus the *Strickland/Pierce* analysis, this Court has applied the performance half of the test by looking both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken, by counsel. *E.g. Bomar,* 826 A.2d at 855 n. 19. Thus, we look to whether the PCRA petitioner can demonstrate that his underlying claim of deficient performance possesses arguable merit, that counsel had no objective reasonable basis for that performance or failure, and that the petitioner was prejudiced. *Id.* at 855. *Strickland* prejudice requires a showing that there is a reasonable probability that, but for counsel's constitutionally deficient performance, the outcome of the proceeding would have been different. *Id.* "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Busanet. See also McGill,* 832 A.2d at 1023.

The *Strickland/Pierce* inquiry may be complicated on PCRA review where layered claims of ineffectiveness are involved. In *McGill* and *Rush,* this Court recently attempted to provide practical guidance to the bench and bar as to the most efficient approach to such layered claims. In such an instance, "the only viable ineffectiveness claim is that related to the most recent counsel, appellate counsel." *Rush,* 838 A.2d at 656 (*citing McGill,* 832 A.2d at 1022). To prove an entitlement to relief in a case such as this—where direct appeal counsel is faulted for failing to raise claims sounding in the alleged ineffective assistance of trial counsel—the PCRA petitioner must plead and prove the *Strickland/Pierce* test as to both his trial and direct appeal counsel. A failure to address each prong of the *Strickland/Pierce* test as to each level of counsel will result in dismissal of the claim. *McGill,* 832 A.2d at 1022. *See also Rush,* 838 A.2d at 656 ("this court requires that a petitioner properly plead and present his claim in order to preserve the claim and be entitled to review"). If

the underlying (or "nested," to use the term employed in *Rush* ) claim of trial counsel ineffectiveness fails the *Strickland/Pierce* test, then the derivative claim of appellate counsel ineffectiveness necessarily fails. *McGill,* 832 A.2d at 1023. On the other hand, a claim of trial counsel ineffectiveness which passes *Strickland* muster at most establishes only the arguable merit of a "layered" claim of appellate counsel ineffectiveness; an assessment of the objective reasonableness of appellate counsels performance and Sixth Amendment prejudice is still required before a claim respecting appellate counsel will succeed.[8]

 Appellant has pleaded these claims in a layered fashion, but he has not developed any distinct argument, either here or in the court below, concerning direct appeal counsel with respect to any of the claims. Instead, appellant relies upon the global, boilerplate allegation quoted earlier. This fact triggers another procedural complication discussed in *McGill* and *Rush.* The *McGill* Court recognized that this Court had "not been clear as to exactly what is required of a PCRA petitioner seeking to plead, present, and ultimately prove a layered claim of counsel ineffectiveness." Since this Court's Rules of Criminal Procedure contemplate permitting amendment of PCRA petitions to address "correctable defects," we noted that a remand might be appropriate in instances where the petitioner had failed to properly develop his cognizable, layered claims of counsel ineffectiveness but was not afforded the opportunity to amend his pleading to cure the defect. 832 A.2d at 1024, *citing Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 526–27 (2001). Accordingly, *McGill* noted that, as to cases currently pending in the appellate courts (such as this one), a *sua sponte* remand may be appropriate to allow petitioners who have failed to develop layered claims an opportunity to develop them below. *Id.*

8. On the question of appellate counsel's Sixth Amendment performance, the U.S. Supreme Court has provided some additional guidance. *See Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

*McGill* then noted one final complication which is central to our disposition here. Since a derivative, layered claim that appellate counsel was ineffective cannot succeed unless the underlying claim respecting trial counsel satisfies the entirety of the *Strickland/Pierce* standard, 832 A.2d at 1024–25 (with layered claim, determination that first counsel was ineffective is "prerequisite" to finding later counsel ineffective), this Court need only remand if it appears that the petitioner can sustain that underlying claim. *Id.* at 1024 ("we caution the bench and bar not to read this [opinion] as a reprieve for PCRA petitioners who have failed to sufficiently plead and present argument on the ineffective assistance of [trial counsel,] which is an essential aspect of a layered ineffectiveness claim."). In *Rush*, we reiterated that a remand is not required if it is clear that the appellant has failed to prove the underlying claim of ineffectiveness:

> [T]here is simply no need to remand a PCRA petition when the petitioner has not carried his *Pierce* burden in relation to the underlying claim of ineffectiveness, since even if the petitioner were able to craft a perfectly layered argument in support of his claim, the petitioner's claim would not entitle him to relief. In these circumstances, a petitioner would never be able to establish the arguable merit prong necessary for proving appellate counsel ineffectiveness. *McGill* at 1025.

*Rush,* 838 A.2d at 657–58.

Here, the PCRA court neither identified appellant's failure to develop his layered claims of appellate counsel ineffectiveness as a ground for dismissal, nor did it offer him an opportunity to amend his petition to develop those claims. Instead, the court reviewed the merits of five of the "nested" versions of appellant's claims, finding them to be lacking in merit. Because we agree that these nested claims of trial counsel ineffectiveness fail, we will not engage in the "futile" act of remanding to allow appellant to supplement his existing pleadings with substantive pleadings respecting appellate counsel. *McGill,* 832 A.2d at 1026. As for the sixth claim (found in Argument IX, Subpart C), although the trial court

did not address the merits of the nested version of the claim, we find it to be so clearly lacking in merit that remand is not required. *Rush.*

 Appellant's first layered claim is premised upon trial counsel's alleged failure to investigate his background and present additional mitigation evidence—specifically, evidence that appellant "suffered from the mental disorder of Pedophilia." The PCRA court held that appellant failed to prove that his counsel's tactical decision not to present the testimony of two court-provided psychiatric experts to this effect was ineffective.[9] Our review of the evidentiary hearings below reveals no error by the PCRA court in this regard. Trial counsel were aware of the availability of evidence that appellant was a pedophile. Counsel did not present that evidence because they feared that, as a practical matter, the jury would tend to regard appellant's pedophilia as more of an aggravating factor rather than a mitigating one. N.T. 10/21/98, a.m. at 73–74; p.m. at 29–35. Appellant now argues that a different psychiatric expert with a better understanding of the phenomenon could have been retained and could have taken the fact of appellant's pedophilia and explained it in a fashion that might have been accepted by a jury as supporting various statutory mitigating circumstances. Though studies and expert opinions concerning pedophilia may have some basis in science, the question of how a lay jury might react to a diagnosis of pedophilia offered as a mitigating circumstance for the gruesome injuries inflicted upon this child is not nearly so certain as appellant apparently believes. Indeed, it is not difficult to imagine that, if trial counsel had presented such "mitigating" evidence, they would now be faulted for doing so by appellant.

9. Before the PCRA court, appellant challenged only his trial counsel's failure to produce the testimony of two psychiatrists who would have testified that he is a pedophile. In his brief to this Court, appellant attempts to expand this claim to include counsel's failure to adequately present evidence of substance abuse and intoxication and failure to present the testimony of two family members who, appellant claims, would have testified to his difficult childhood. Because these additional claims were not raised in the PCRA court, they cannot be reviewed here. Pa.R.A.P. 302(a); *Bond,* 819 A.2d at 52; *Jones,* 811 A.2d at 1003–04.

We cannot say that counsels' strategic decision, made with an awareness of the availability of this volatile evidence, was objectively unreasonable. Common sense may still play a proper role in the defense function. Thus, the underlying claim of ineffectiveness of trial counsel lacks merit.

▮ Appellant's second layered claim is that all prior counsel were ineffective for failing to claim that the trial court improperly remarked on his credibility at the penalty phase. Appellant took the stand at his bench trial and claimed an alibi; in convicting appellant, the trial court disbelieved that alibi. Appellant also took the stand at the penalty phase and reiterated his alibi claim before the jury notwithstanding that he had been convicted of murder in the first degree. During the penalty phase jury charge, the trial court accurately instructed the jury that appellant had raised an alibi defense at trial, but that the defense "was not accepted by the Court in the guilt phase and found to be not credible." Appellant argues that, while the court could inform the jury of the fact of his conviction at the guilt phase, it had "no cause" to state that it had found the alibi defense not credible. Citing to two cases from New Jersey, but to no governing federal or Pennsylvania authority, appellant suggests that he was entitled to renew his failed alibi defense before his new fact-finder in the hopes of establishing "lingering or residual doubt before the jury." Brief of Appellant at 76. Appellant argues that trial counsel should have objected to the charge and should have requested a curative instruction and the failure to do so prevented the jury from weighing his credibility concerning residual doubt.

The Commonwealth responds by noting that neither the U.S. Supreme Court nor this Court has held that a capital defendant, who has been convicted of first degree murder, is entitled to present evidence to the penalty phase fact-finder tending to prove "lingering doubt" or "residual doubt." *Franklin v. Lynaugh*, 487 U.S. 164, 173–74, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion); *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 277 (2000). Thus, the Commonwealth argues, appellant's alibi testimony at the pen-

alty phase was irrelevant. In any event, the Commonwealth argues that the court's charge merely placed the jury in the position it would have been in with respect to the alibi defense if it had heard and determined that issue at the guilt phase of the trial. As such, and given the overall tenor of the court's charge pertaining to assessing witness credibility, the Commonwealth argues that appellant has failed to prove that trial counsel were ineffective.

In rejecting this claim, the PCRA court cited this Court's decision in *Commonwealth v. Chambers,* 546 Pa. 370, 685 A.2d 96 (1996), where we addressed a claim somewhat similar to appellant's, albeit that claim arose out of a resentencing hearing. In holding that it was not error to admit evidence presented at the guilt phase of the trial, we noted:

> When the same jury decides guilt and penalty, the evidence presented at the sentencing phase need not include everything presented in the guilt phase. The jury is well acquainted with the trial evidence. Here, however … the jury is called upon to sentence the defendant to life imprisonment or the death penalty without having attended his trial. It is incumbent on the prosecutor to prove beyond a reasonable doubt everything that will enable the jury to perform its duty. This entails duplicative presentation of evidence presented at trial, but not in the original sentencing hearing, to place the resentencing jury as nearly as possible in the shoes of the original jury.

*Id.* at 108–109. The PCRA court found that appellant's claim lacked merit because an alibi defense goes to guilt or innocence, and not to the sentence to be imposed, and thus the jury charge "merely present[ed] to the jury what exactly had occurred in the guilt phase of the trial." PCRA court slip op. at 5–6.

It is not uncommon in the trial scheme in capital cases for the sentencing jury to be a different body than the finder of fact at the guilt phase. In light of the fact that appellant's sentencing jury was uninvolved in the guilt phase, there was no general error in the trial court apprising the jury of relevant circumstances concerning what had gone before in

the guilt phase. Moreover, when appellant repeated his claim of alibi at the penalty phase, it was appropriate for the court to apprise the jury that the claim, which if accepted would have warranted a guilt phase acquittal, had not been accepted. Indeed, the fact that the court had not accepted the defense was inherent in the verdict, and the penalty phase jury was not authorized to ignore the trial court's guilt phase verdict.

Turning to appellant's complaint that it was inappropriate for the court to comment on credibility, we note that the court did not purport to comment upon appellant's credibility, but only upon the credibility of the alibi defense presented at the guilt phase. Moreover, the comment was issued as part of the court's summary for the jury of the effect of the guilt phase verdict upon their deliberations: *i.e.*, that the trial court had found appellant guilty and the jury must accept those findings. Immediately after this portion of the charge, the court instructed the jurors at length on witness credibility, repeatedly emphasizing that they were the sole judges of credibility, and noting that the general considerations governing the assessment of credibility applied in their review of appellant's testimony. N.T. 10/5/89, 233–41.

Even if we were to assume that the comment on the credibility of the guilt phase alibi defense was objectionable, appellant has not demonstrated that there is a reasonable probability that, but for counsel's failure to object, the outcome of the penalty phase proceeding would have been different. Under appellant's theory, evidence of his failed alibi was relevant at the penalty phase, if at all, only to a residual doubt argument. Even if we were to assume that residual doubt may properly be argued to a jury in some circumstances, it is difficult to perceive its relevance where, as here, the sentencing jury did not pass upon the defendant's guilt or innocence. The question of underlying guilt or innocence, and any level of doubt as to that guilt, was never before the jury: there is, thus, no "residue" for it to consult. The fact that a trial is bifurcated upon a defendant's request does not open the door for him to invite the penalty phase jury to second-guess the factual determinations of the guilt-phase fact-finder.

Even leaving aside the illogic of the theory in a bifurcated proceeding such as occurred at this trial, there was little chance that appellant suffered the prejudice he now claims he suffered. Residual doubt is not a statutory mitigating circumstance and, as noted, given its statutory irrelevance, it is not clear that appellant should have been permitted to present this sort of evidence/argument at all. In any event, in defense counsel's penalty phase summation, he did not argue residual doubt based upon appellant's testimony denying his guilt. Rather, counsel argued "within the confines of the law" (counsel's words), recognizing that appellant had been convicted. What counsel then stressed was not residual doubt, but that the question of penalty was distinct from the question of guilt, and that a penalty of death was appropriate "only in the rare, the unusual, the exceptional cases." N.T. 10/5/89 at 216. Counsel then went on to argue appellant's character as a mitigating circumstance. Nor did the court charge the jury on any theory of residual doubt which would authorize it to employ residual doubt as some additional factor weighing in favor of a sentence of life imprisonment. Given that the court did not comment on the credibility of appellant's testimony except to advise the jurors that such was for them to determine, that trial counsel did not argue residual doubt, and that the jury was not instructed that it was empowered to consider appellant's continuing denial of guilt as a ground for returning a life sentence, the claim that the court's comment was prejudicial fails.

Appellant's third layered claim is that he was denied various rights because the transcripts of *voir dire* were neither requested nor produced until after he commenced his collateral attack. The PCRA court found this claim to be moot (citing appellant's own pleading below) because, after investigating the matter, the court ensured that the relevant transcripts were provided to appellant and thus he was free to present whatever claims would be revealed by the transcript. In his brief to this Court, appellant now declares that the absence of the transcripts prevented counsel from presenting jury selection issues on direct appeal. Despite the fact that

appellant and his counsel had access to the relevant transcripts for purposes of PCRA review, however, appellant still does not identify any specific claim that direct appeal counsel could have made, or should have made, based upon the transcripts. Counsel cannot be held ineffective in a vacuum. Appellant has utterly failed to rebut the presumption that counsel were effective in this regard.

Appellant's fourth layered claim alleges that trial and appellate counsel were ineffective for failing to challenge the trial court's failure to instruct the sentencing jury that, if appellant were sentenced to life imprisonment, he would be ineligible for parole. Appellant originally posited this claim as one sounding under *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). Because this case was tried before *Simmons,* however, and because the United States Supreme Court held in *O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) that *Simmons* does not apply retroactively, appellant now recasts the claim. He now argues that the Commonwealth placed his future dangerousness at issue in violation of the Pennsylvania capital sentencing statute, 42 Pa.C.S. § 9711, because future dangerousness is not an aggravating circumstance under the statute and is therefore not a valid factor for jury consideration. He cites a number of cases in support of this argument. *See Commonwealth v. Marrero,* 546 Pa. 596, 687 A.2d 1102, 1108 n. 19 (1996); *Commonwealth v. Pirela,* 556 Pa. 32, 726 A.2d 1026, 1035 n. 19 (1999); *Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877, 883 n. 7 (1995). Further, appellant argues, this Court has held that it is impermissible for the prosecution to refer to considerations outside the death penalty statute to argue for the imposition of the death penalty. *See Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516, 529 (1997); *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130, 146 (1996); *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630, 644 (1991). Reading this case law in concert, appellant concludes that the jury was improperly permitted to consider evidence of his future dangerousness in violation of the sentencing statute.

Appellant's federal constitutional claim is multipart. Appellant argues that his due process rights were violated when he was denied the opportunity to rebut or explain the implication of the alleged evidence of his future dangerousness, when he was sentenced to death under a material misapprehension on the part of the jury regarding his parole eligibility, and when he was denied his liberty interest by the failure of the court to instruct the jury regarding the statutory sentencing option of life without the possibility of parole. Appellant also claims that his sentence was arbitrary and capricious because the jury was presented with a false choice of sentencing options. Finally, appellant argues that the jury should have been permitted to consider that he would not be eligible for parole in mitigation.

The Commonwealth counters that appellant's claim fails both factually and legally. First, the Commonwealth claims that it did not argue appellant's future dangerousness to the jury. Instead, the sole evidence of appellant's dangerousness consisted of appellant's own testimony at the penalty phase that he previously had been charged with and later acquitted of the sexual assault of his minor daughter. Second, the Commonwealth notes that appellant's challenges under the federal Constitution echo the bases for the *Simmons* decision. In other words, according to the Commonwealth, appellant is simply repackaging his earlier *Simmons* claim without the *Simmons* wrapping. Having reviewed the penalty phase record, we agree with the Commonwealth on both counts.

The record reveals that the Commonwealth's factual argument is correct, which alone could end our inquiry. Appellant did indeed testify to his prior sexual assault charge and acquittal and was briefly cross-examined on that issue. The Commonwealth's closing argument was confined to the two aggravating circumstances ultimately found by the jury, torture and that the murder was committed in the course of another felony, that felony being rape. Regarding appellant's federal constitutional claims, he is, in essence, arguing that his trial counsel should have been as prescient as Simmons' lawyers were by making an argument that appellant was

entitled to an instruction that at the time of appellant's trial was not required and indeed was forbidden in Pennsylvania. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1186 (1999). Appellant raises this complaint in the context of a layered claim of counsel ineffectiveness; therefore, he is required to prove that his underlying claim has merit. Because such a jury charge was forbidden at the time of appellant's trial, counsel cannot be deemed ineffective for failing to request the charge. We will not find counsel ineffective for failing to foresee changes in the law wrought by *Simmons*. *Williams*, 732 A.2d at 1186; *Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154, 166 (1999).

Appellant's claims sounding under the Pennsylvania capital sentencing statute are equally unavailing. First, and most importantly, appellant's future dangerousness was not placed before the jury at all, much less was it posed or argued as an aggravating circumstance which caused the jury to sentence him to death. Second, although appellant is correct on the two essential legal predicates for his argument—*i.e.*, that future dangerousness is not a valid aggravating circumstance in Pennsylvania and that injecting non-statutory aggravating circumstances into a capital jury's sentencing determination is reversible error—the defect with appellant's argument lies in his attempt to apply those predicates to this case.[10] Appellant essentially argues that his future dangerousness was used by the Commonwealth as a pseudo-aggravator, resulting in his death sentence. But the record is wholly devoid of support for this claim. What is clear from the record is that the jury

10. None of the cases appellant cites support the intertwining of these propositions. Appellant relies on isolated statements pulled from each of the cited opinions and taken wholly out of context. For example, the issue in *Marrero* was whether a defendant is entitled to voir dire prospective jurors on the issue of racial bias. *Pirela* and *Christy* both concern whether a capital defendant is entitled to state-paid psychiatric assistance at the penalty phase. In each instance, in a footnote, this Court noted that future dangerousness is not a valid aggravating circumstance in Pennsylvania. In *Morales*, the non-statutory aggravator placed before the jury was the possibility that the defendant would be released on parole at some future date. No such argument was made to appellant's jury. *Fisher* and *Chambers* involved the introduction of victim impact testimony and biblical arguments, respectively.

found two aggravating circumstances, that appellant tortured his infant victim and that the murder was committed in the course of rape and involuntary deviate sexual intercourse. The sole mitigator found by the jury was that appellant had no significant history of prior criminal convictions, and the jury determined that the two aggravating circumstances out-weighed this mitigating circumstance. Logically, whether appellant presented a danger to others in the future does not factor into either of the aggravating circumstances, which were concerned with the particulars of this murder. Because there is no underlying merit to his claim, appellant has failed to demonstrate that his prior counsel were ineffective.

 In his fifth layered claim, appellant submits that counsel were ineffective for failing to argue that the prosecutor misstated the law during his penalty phase summation when discussing appellant's intoxication evidence. The PCRA court found that the prosecutor's comments were not a mis-statement of the law, but instead, merely argued the prosecutions view of that evidence. The PCRA court noted that, in his own penalty phase closing, appellants counsel had argued as a mitigating circumstance that appellant was intoxicated, angry and emotionally disturbed. Appellants counsel specifically pointed to the testimony of witnesses and appellant's own actions that would lead to a conclusion that appellant was intoxicated at the time of the murder. In response, the prosecutor stated that the jury was required to consider whether appellant was so intoxicated as to not be accountable for his actions, and that to make this determination, the jury should consider the strength of the evidence presented. The PCRA court held that both appellants counsel and the prosecutor argued their respective side of the issue and both made it clear to the jury that it was ultimately the role of the jury to determine if appellants intoxication was sufficient to be considered a mitigating circumstance. Our review of the penalty phase transcript reveals that the PCRA courts analysis of the arguments advanced by appellants trial counsel and the prosecutor is accurate. The fact that the parties lawyers dispute the significance of proffered evidence does not mean that one

must be misstating the law. In any event, it is the court which instructed the jury on the law, and counsel could trust in the fact that the jury was made well aware of the role of counsels argument in the jury's determination. The underlying claim of trial counsel ineffectiveness therefore lacks merit.

 Appellant's sixth and final layered claim is that all prior counsel were ineffective for failing to claim that the prosecutor improperly questioned appellant at the penalty phase concerning his prior arrest, trial and acquittal of sexual assault and molestation charges involving his adopted daughter. Citing to no case authority, appellant states that Pennsylvania law prohibits a prosecutor from cross-examining a criminal defendant on his prior convictions and, therefore, a prior acquittal cannot be an appropriate topic for cross-examination either. By cross-examining him regarding the prior acquittal, appellant asserts, the prosecutor introduced "irrelevant" evidence and improperly injected a non-statutory aggravating circumstance into the penalty proceedings. The Commonwealth counters that appellant opened the door to the cross-examination in this instance by volunteering testimony on direct examination regarding the charges and acquittal.

The record reveals that, in his direct testimony at the penalty phase, and apparently as part of his continuing denial of guilt, appellant claimed that the state trooper who had questioned him regarding the murder "was very accusative;" said that he believed appellant was responsible for the death of the child; and stated that "because of my past situation with my wife and kids that I had committed this crime against [the child], that I was sick." Appellant further claimed that he felt that the trooper "directly accused" him of committing the instant crime because of "a past charge" he had faced. Asked by his counsel what had happened on that past charge, appellant testified that he was tried before a jury and was "found innocent and that it was my wife that which basically had"—at which point his counsel cut him off and asked whether the verdict in the prior case was "not guilty," and appellant agreed. N.T. 10/5/89 at 62–63.

On cross-examination, the prosecutor asked appellant to explain the past "situation" with his wife and kids which appellant had claimed was the basis for the trooper accusing him of this crime. Appellant responded that his wife had had him arrested for molesting his daughter and that he was then tried before a jury in Reading, Pennsylvania. Appellant repeated the claim that he was "found innocent of those charges." Appellant added that "it's listed in transcripts that my wife in fact had sexual preferences." The prosecutor, like appellant's counsel on direct, clarified that appellant was found not guilty, rather than innocent. In response to appellant's apparent suggestion that his wife was behind the charges, the prosecutor asked, "your wife wasn't in [sic] trial down there," to which appellant responded, "No, but she admitted to the facts." N.T. 10/5/89 at 143–44.

Again citing no authority, appellant now contends that the prosecutor's accurate comment that appellant was found not guilty, rather than "innocent," was "inherently prejudicial ... improper and unethical." In appellant's view, the prosecutor's statement implied to the jury that appellant was actually guilty of molesting his daughter. In forwarding this argument, appellant inexplicably fails to acknowledge that it was he who broached the topic of the prior charge and verdict on direct examination and that, indeed, his own counsel had corrected appellant's initial erroneous claim that he was found innocent, rather than not guilty.

We agree with the Commonwealth that appellant's underlying claim that the prosecutor acted improperly lacks merit. First, although it might have been improper for the prosecutor to have initiated an examination concerning a prior acquittal, the calculus is entirely different when the defense opens the door to the subject. Second, the prosecutor did no more than appellant's own counsel on direct, when faced with appellant's initial inaccurate claim that he was found innocent, rather than that he was acquitted or found not guilty. When appellant repeated the mischaracterization of the previous verdict on cross-examination, the prosecutor was no less warranted in correcting it. Third, appellant's argument that he was preju-

diced by the correction fails. Indeed, since appellant's argument on prejudice fails to come to terms with the record facts that it was he, and not the prosecutor, who broached the subject of the prior charges, and that his own counsel made the same corrective point concerning the verdict in that case, no relevant argument on prejudice is forwarded. In any event, the prosecutor never argued that appellant's prior acquittal constituted an additional aggravating circumstance; the jury was never told that it could find such an additional aggravating circumstance; and the only two aggravating circumstances found by the jury—that appellant tortured his infant victim and that the murder was committed in the course of rape and involuntary deviate sexual intercourse-had nothing to do with the prior charges. Because the underlying claim of prosecutorial misconduct is meritless, the layered claim of counsel ineffectiveness necessarily fails.

Three issues remain. The first is appellants procedural claim that the PCRA court failed to provide him with a "meaningful" hearing on his claims (Argument I). The record is clear that the court did, in fact, conduct evidentiary hearings on October 21 and December 16, 1998. In addition, the PCRA court held two lengthy sessions on August 12 and September 29, 1998, at which the parties argued legal issues arising out of appellant's petition. Appellant also submitted certifications from several proposed witnesses to the PCRA court which, according to that courts opinion, were considered in reviewing appellant's PCRA petition.

This Court's Rules of Criminal Procedure provide that a PCRA court should hold an evidentiary hearing where a PCRA petition raises any material issues of fact. Pa. R.Crim.P. 908(A)(2). Where the PCRA court determines that a hearing is required as to some, but not all, of the issues raised in a petition, the hearing may be limited to those issues. Pa.R.Crim.P. 907(3). *See, e.g., Commonwealth v. Carpenter,* 555 Pa. 434, 725 A.2d 154, 170 (1999). Appellant fails to develop his argument that the court failed to provide him with a meaningful opportunity to adduce "affirmative" evidence in support of his claims. Indeed, he does not identify which of

his many claims were presented in such a fashion as to warrant further hearing, and how it was that the PCRA court deprived him of a "meaningful" hearing as to that claim. Appellant does not identify instances where the PCRA court wrongly curtailed his examination of witnesses or wrongly denied him the opportunity to elicit testimony in support of his claims. Accordingly, this procedural claim fails.

Appellant next argues that this Court failed to provide him with "meaningful" proportionality review on direct appeal (Argument XI). This claim necessarily fails. As this Court noted in *Jones,* 571 Pa. 112, 811 A.2d 994:

> Since, as appellant necessarily concedes, the proportionality of his sentence was actually decided by this Court on direct appeal, this claim is previously litigated. *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 708 (1998) (This court has already fulfilled its statutory obligation to review Appellant's sentence for proportionality and ruled against him on this issue. This issue is now beyond the purview of the PCRA because it was previously litigated.)

*Id.* at 1001. *Accord Wharton,* 811 A.2d at 991.[11]

In any event, appellant's collateral attack upon this Court's proportionality review fails. Appellant claims that this Court's review was tainted by a misstatement regarding the aggravating and mitigating circumstances found by the jury. According to appellant, this Court erroneously stated that its proportionality review was predicated upon the jury's finding of "at least one aggravating circumstance . . . and no mitigating circumstances." *Edmiston I,* 634 A.2d at 1093. In fact, the jury found two aggravating circumstances and one mitigating circumstance. Therefore, appellant alleges, this Court's proportionality review was not grounded in the record. Our opinion on direct appeal, however, belies this assertion.

11. We note that, in 1997, the General Assembly deleted the requirement of proportionality review. This Court continues to undertake a proportionality review on direct appeal of death sentences in cases where the sentence of death was imposed prior to June 25, 1997, the effective date of the repeal. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997).

The paragraph in *Edmiston I* upon which appellant predicates this claim reads as follows:

> We now comply with our duty under 42 Pa.C.S. § 9711(h)(3)(iii) to review sentences of death from the standpoint of the proportionality to sentences imposed in similar cases. We have reviewed the sentence imposed on appellant in light of sentencing data compiled and monitored by the Administrative Office of Pennsylvania Courts. We perceive no excess or disproportionality in the sentence imposed. Further, the record does not provide any basis for belief that the sentence of death was the "product of passion, prejudice or any other arbitrary factor." *See* 42 Pa.C.S. § 9711(h)(3)(i). Also, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S. § 9711(d) and of no mitigating circumstances. *See* 42 Pa.C.S. § 9711(h)(3)(ii). Accordingly, the sentences must be affirmed.

*Id.* (case citations omitted). This paragraph encompassed this Court's statutory review of the sentence of death, as required by Section 9711(h)(3) of the Sentencing Code. At the time of appellants direct appeal, this review consisted of three distinct parts: (1) review for passion, prejudice or any other arbitrary factor (subsection (i)); (2) review for the presence of sufficient evidence supporting at least one of the aggravating circumstances (subsection (ii)); and review for proportionality (subsection (iii)). It is true that the passage misstates that the evidence supported at least one aggravating circumstance and no mitigating circumstance. But, as the excerpt makes perfectly clear, that misstatement had nothing to do with this Court's proportionality review under subsection (iii); rather, the misstatement was in connection with this Court's separate statutory duty, pursuant to subsection (ii), to conduct a review to ensure that at least one of the aggravating circumstances was supported by the evidence. Our duty under subsection (ii) does not implicate review of mitigating circumstances; but that inadvertent mischaracterization had nothing to do with the proportionality review already conducted.

Appellant also attempts to collaterally attack this Court's proportionality review by claiming that we utilized a "systematically inaccurate database, without providing Appellant's counsel notice and an opportunity to participate." Appellant's Brief at 97. This claim fails because we have consistently upheld the validity of our proportionality review against similar challenges. *Commonwealth v. Marshall*, 571 Pa. 289, 812 A.2d 539, 551–52 (2002); *Wharton*, 811 A.2d at 991; *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 440 (1998).

Finally, appellant claims that the cumulative effect of the errors he has alleged entitle him to relief (Argument XII). Because we find no merit to any of appellant's claims, their alleged cumulative effect does not warrant relief. *Bond*, 819 A.2d at 52 (citing *Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1208–09 (1999) ("No amount of failed claims may collectively attain merit if they could not do so individually")); *Marshall*, 812 A.2d at 552.

For the foregoing reasons, we affirm the order of the PCRA court.[12]

Justice SAYLOR files a concurring opinion in which Justice NIGRO joins.

Justice SAYLOR concurring.

I agree with the result reached by the majority, but write separately because I am unable to join the majority's reasoning as to several of Appellant's claims. For example, while it is true that this Court has generally applied the previous litigation bar to post-conviction challenges to proportionality review, *see, e.g., Commonwealth v. Albrecht*, 554 Pa. 31, 61, 720 A.2d 693, 708 (1998); *Commonwealth v. Jones*, 571 Pa. 112, 123, 811 A.2d 994, 1000–01 (2002), the claim in those matters was deemed to fall outside of the ambit of the PCRA because the Court had already fulfilled its proportionality obligations on direct review. *See Albrecht*, 554 Pa. at 61, 720

---

12. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor in accordance with 42 Pa.C.S. § 9711(i).

A.2d at 708; *Jones,* 571 Pa. at 123, 811 A.2d at 1001. The situation is different where (as here) the post-conviction petitioner's allegation that the Court did not fulfill such obligations rests upon a mistake of fact patent from the face of the opinion itself. In this case, the claim could not logically have been raised or litigated prior to the issuance of the Court's opinion. Therefore, I believe that Appellant's contention in this regard is cognizable under the PCRA. Moreover, it is not apparent, to me at least, that, simply because the mistake of fact appears in a different part of the paragraph, it could not have affected the proportionality analysis. We cannot know, at this juncture, that the three distinct statutory review functions set forth in that paragraph were undertaken with such clean boundaries that erroneous information reflected in one aspect of that function could not also have been relied upon for any other portion of it. Accordingly, I would find that Appellant is entitled to a new proportionality review by this Court.

That said, I reach the same ultimate result as the majority, namely, that this claim does not entitle Appellant to a new sentencing hearing. This was a particularly gruesome rape and murder of a two-year-old girl, whom Appellant had separated from her family and transported to a remote area where it was impossible for any help to come to her. In such circumstances—and taking into account the relevant data from the Administrative Office of Pennsylvania Courts and other information pertaining to similar cases—imposition of the death penalty here was neither disproportionate nor excessive.

As a separate matter, Appellant asserts that, at *voir dire,* it was apparent that some of the venirepersons selected to serve on his jury mistakenly believed that death was the presumptive sentence for first-degree murder, and that this error improperly imposed upon him the burden of persuading them to "reduce" his sentence to life. He contends that trial counsel was ineffective for failing to challenge such jurors for cause (Argument VII). The majority rejects this claim without reaching its merits on the basis that Appellant allegedly waived it by failing to raise it before the PCRA court. The

record reveals, however, that, on December 16, 1998, Appellant filed a motion seeking to amend his petition, in which he raised the issue. The PCRA court never ruled on the motion, and hence, we have no substantive basis to conclude that the court either allowed the amendment or disallowed it. *See generally* Pa.R.Crim.P. 905(A) (stating that amendments to PCRA petitions "shall be freely allowed to achieve substantial justice"). Under such circumstances, this Court should not summarily consider the issue waived. Rather, if there is any potential merit to the claim, the preferred course would be to remand the matter to the PCRA court for a ruling on the motion to amend.

Nevertheless, a remand is unnecessary here because the claim lacks arguable merit. Although Appellant identifies several jurors whom he argues should have been struck, he only supports his contentions by highlighting limited portions of the *voir dire* proceedings which are taken out of context. Appellant asserts, for example, that venireman Robert Santee was biased in favor of the death penalty. However, after the portion of the questioning that Appellant cites, defense counsel and the court both interviewed Mr. Santee, whose unequivocal responses reflected that he would follow the instructions of the court. *See* N.T. 9/26/89 at 239–41. Furthermore, earlier in the interview, the prosecutor asked Mr. Santee whether he would presume that death was the appropriate penalty, to which he responded that he would not. *See id.* at 235–36. Similarly, a full review of the questioning of the other jurors identified by Appellant gives little foundation to conclude that they would not be fair and impartial, or would have trouble following the judge's instructions.

Finally, while I agree that counsel's decision not to present evidence of Appellant's pedophilia had a reasonable basis, I note that Argument II contains additional subparts unrelated to the issue of pedophilia. *See* Brief for Appellant at 34–56. Although I believe that the Court should review these allegations—which pertain primarily to counsel's failure to present certain lay testimony, as well as expert evidence concerning

Appellant's prior history of alcohol abuse—they are insufficient, in my view, to undermine confidence in the verdict.

Justice NIGRO joins this concurring opinion.