## Commonwealth v. DiNatale

*Mark S. Matthews, assistant district attorney,* for Commonwealth.

*Brandon R. Reish,* for defendant.

SIBUM, *J.,* March 15, 2011—Defendant Generro DiNatale has been charged with theft by unlawful taking or disposition (18 Pa.C.S. §3921(a)), two counts of theft by deception (18 Pa.C.S. §3922(a)(1), (3)), insurance fraud

(18 Pa.C.S. §4117(a)(2)), and false reports (18 Pa.C.S. §4906(b)(1)), in connection with events that allegedly occurred on March 17, 2010 after defendant reported a burglary at his home. A preliminary hearing was held on November 2, 2010 at which time all the charges were bound over for court. The Commonwealth filed a criminal information on December 20, 2010, charging defendant with the above named offenses. Defendant filed an omnibus pretrial motion on January 19, 2011 including: (1) a motion for habeas corpus relief, (2) a motion to compel discovery, and (3) a motion to continue trial. A hearing was held on February 4, 2011. Both parties have submitted briefs and we are now prepared to decide this matter.

The relevant facts as provided in the affidavit of probable cause, through testimony presented at defendant's omnibus hearing, and through the preliminary hearing transcript offered into evidence, follow. On March 17, 2010 at 9:30 a.m., Detective Thomas Lynott ("detective") of the Pocono Township Police Department responded to Generro "Jerry" DiNatale's ("defendant") residence in regards to a reported burglary. Upon arrival, detective spoke to defendant who related the following version of events.

On March 16, 2010, defendant left his home at 4:00 a.m. to go to Hoboken, New Jersey where he had several businesses. Defendant took his four German Shepherd dogs with him because he had no one to watch them. Defendant returned to his residence that evening at 9:15 p.m. and left again at approximately 10:30 p.m. According to defendant, he was on the Fox network television program "Good Day

New York" on March 17, 2010, which airs live weekdays from 7:00 to 9:00 a.m.

Defendant returned to his residence at 8:45 a.m. on March 17, where he noticed that the door leading into the garage was ajar. Defendant entered his garage and noticed that his John Deere 54-inch Zero Turn Lawn Mower was missing, as well as his Yamaha 450 ATV. Defendant reported that a chainsaw, vacuum cleaner, a dog bite suit, and a K-9 bullet proof vest were missing.

According to defendant, his four German Shepherds were retired New York City police dogs, and the bullet proof vest came with one of the dogs when it was retired.

Defendant entered into his home on the first floor and noticed several items missing from the living room, including a 65-inch Sharp Aqua Television, an amplifier, speakers, a custom surveillance computer, and a rack containing various CDs. He then proceeded into his office and found that a 54-inch Samsung television, a laptop computer, a digital computer and a floor safe weighing approximately 300 pounds were also missing. Defendant indicated that nothing was taken from the master bedroom.

During their meeting on March 17, defendant provided detective with a list of purported stolen items valued at $19,850.00. Defendant advised that he would provide detective with VIN numbers for the lawnmower and ATV. Defendant also informed detective that he had an alarm system on his home but that it was not activated on the night of the 16th because it had been generating too many false

alarms. Approximately one week later, defendant dropped off a revised list of the items stolen during the burglary to detective. The revised list prepared by defendant valued his losses at $84,694.97.

After receiving the above account of the alleged burglary from defendant, detective continued his investigation, which included photographing the entire crime scene. Among the areas photographed was defendant's master bedroom. The master bed was covered by sheets and blankets.

On March 20, 2010, detective contacted Pocono Tractor, a local John Deere dealer. Store personnel indicated that they had done repair work on defendant's mower. Detective obtained the VIN number for defendant's lawnmower and entered it into NCIC.

On March 27, 2010, detective contacted Pocono Motorsports, the store where defendant had purchased the ATV, and obtained the VIN number for the vehicle. Detective then entered the ATV VIN number into NCIC.

Also on March 27, 2010, detective interviewed Deanna Lane ("Lane"), a woman who had lived at defendant's home for several months. Detective informed Lane of the burglary and showed her the list of items defendant reported as stolen. After reviewing the list, Lane advised detective that defendant had previously sold or traded many of the items listed as stolen, including the ATV and large screen television.

On April 21, 2010, detective met with Denisha Mitchell ("Mitchell"), a sales representative for Best Buy, the store

where defendant had purchased most of the electronics he reported as stolen. According to Best Buy records, a Samsung 26-inch LCD HD TV was purchased on October 25, 2006 from a Best Buy in Florida. Mitchell testified that the receipt indicated that the TV was returned on October 31, 2006 and repurchased. Another receipt indicated that the repurchased television was then returned on November 1, 2006, and the money was credited to an American Express card belonging to "Forte DiNatale." Best Buy's records also revealed that defendant bought the 65-inch HD TV on July 5, 2008. Defendant returned the television on November 9, 2008 and was issued a store credit for $7,366.99. As of April 20, 2010, the store credit had not been utilized. In addition, Best Buy's records showed that defendant had purchased a wall mount for the television which was returned. The money received was used to purchase various different items, including a bottle of Vitamin Water, a Call of Duty video game, and a two-year protection plan.

On April 23, 2010, detective spoke to New York City K-9 Officer Veronica Hammer ("Hammer"). Hammer stated that it is NYPD's policy that when a canine is retired, it is turned over to its handler. According to Hammer, it would be extremely rare if a retired canine would be given to non-police personnel. Hammer also stated that no non-police personnel would be given four retired dogs. Hammer further relayed that NYPD does not issue bullet proof vests for its canines. She indicated that if a dog had a vest, it was purchased through private donations, and NYPD would not give the vest away with a retiring dog as each vest costs approximately $1000.

On May 4, 2010, detective met with Drew Dorbert ("Dorbert"), an insurance adjuster for Chartis Insurance, defendant's insurance company. Dorbert stated that on April 16, 2010, he interviewed defendant about the burglary. Dorbert related that defendant had stated to him that he had left home on March 16, 2010 at 8:10 p.m. to go to an awards dinner in New Jersey where Bill O'Reilly was present and that defendant was going to be on a Fox talk show in the morning. Dorbert further related that defendant also stated to him that all of the bedding from the master bedroom had been taken and that the police told defendant that the burglars used the bedding to cushion and cover the stolen items.

Dorbert advised that defendant had submitted an insurance claim in excess of $107,000 to Chartis Insurance. David Lenci ("Lenci"), a claims adjuster for Chartis Insurance, was transferred defendant's claim. Lenci testified that Chartis Insurance issued defendant a check in the amount of $98,183.71. On April 30, 2010, defendant deposited this check into the bank account of Fortunato DiNatale, his father.

On May 8, 2010, detective interviewed Efrain Rivera ("Rivera") in regards to defendant's ATV. Rivera stated that in the summer of 2009, his cousin Frank Rivera had gotten the ATV in question from Lason Troutman. Rivera testified that it was his understanding that defendant gave Troutman the ATV to pay off a debt defendant owed to Troutman. Rivera stated that the ATV needed some repairs, so Rivera took it to Offroad Cycle in Delaware Water Gap, Pa. Rivera paid for the repairs and then sold the ATV to

Pocono Exchange in Marshalls Creek, Pa.

On May 12, 2010, detective interviewed Jennifer and Michael Kearney, owners of Offroad Cycle. The Kearneys substantiated Rivera's story and produced a bill for the work from August 29, 2009. Detective testified that he retrieved the VIN number for the ATV repaired by Offroad Cycle, and it matched the VIN number provided by Pocono Motorsports.

On May 19, 2010, detective recovered from Bradley Jones ("Jones"), owner of Pocono Exchange, the ATV defendant claimed was stolen. Jones testified that Frank Rivera had sold it to him for $2,500. Detective ran a registration check on the ATV's VIN, which indicated that the ATV was registered to Fortunato DiNatale, defendant's father.

In addition, detective also obtained from Fox News a DVD copy of their "Good Day New York" program that aired March 17, 2010. Defendant was not on that program.

Detective met with defendant on May 19 to inform him of the results of his investigation and the discrepancies it revealed in defendant's version of the burglary events. Detective informed defendant that by August 2009, the ATV was already in someone else's possession and had repair work done dated August 29, 2010. Defendant responded that one of his cousins must have damaged the ATV and did not tell him.

Detective then asked defendant why he told Dorbert that on the night of March 16, 2010 he was at an awards dinner

but told detective that he was on the Good Day New York television show on March 17, 2010. Defendant responded that he had been on the New York show several times and must have been confused as to the date he appeared on the show. Defendant then went on to state that if he needed the money, why hadn't he cashed the insurance check ?

## DISCUSSION

### 1. *Motion for Habeas Corpus Relief*

When a criminal defendant seeks to challenge the sufficiency of evidence presented against him, he may do so by filing a writ of habeas corpus with the court of common pleas. *Commonwealth v. Carmody*, 799 A.2d 143,146 (Pa. Super. 2002). In such instances, the habeas court acts in the capacity of a reviewing court to assess whether sufficient evidence exists to require the defendant to be brought to trial. *Id.* at 146-47.

"At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt." *Commonwealth v. Huggins*, 575 Pa. 395, 402, 836 A.2d 862, 866 (Pa. 2003). Rather, the Commonwealth establishes a prima facie case when it produces evidence of "each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Id.* A prima facie case can be established by evidence that, if accepted as true, would warrant the trial judge to allow the case to go to the jury. *Commonwealth v. Martin*, 727 A.2d 1136, 1142 (Pa. Super. 1999), allocator denied, 745 A.2d 1220 (1999). In deciding if a prima facie

case has been made, any inferences reasonably drawn from the evidence in the record that would support a guilty verdict are to be given effect and "the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001). The weight and credibility of the evidence are not factors at this pre-trial stage. *Commonwealth v. Wojdak*, 502 Pa. 359, 369, 466 A.2d 991, 997 (Pa. 1983).

### a. *Theft by Unlawful Taking or Disposition*

Defendant has been charged with one count of theft by unlawful taking pursuant to 18 Pa.C.S. §3921 (a), which provides as follows:

(a) Movable property. -- A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof §3921 (a).

"Property of another" is defined as "anything of value, including real estate, tangible and intangible personal property..." which "any person other than the actor has an interest which the actor is not privileged to infringe...." 18 Pa.C.S. §3901.

Here, defendant accepted a check in the amount of $98,183.71 for the value of items allegedly stolen from his residence. The commonwealth has submitted proof that several of the items which defendant claimed were stolen from his residence, including the 65-inch television, the 26-inch television and the Yamaha ATV, were actually traded in or returned to where they were purchased and were not in the possession of defendant at the time of the

purported burglary. Nonetheless, defendant reported them stolen and accepted money from the insurance company to replace their value. The Commonwealth has established a prima facie case for the offense of theft by unlawful taking.

b. *Theft by Deception - (1) False Impression and (2) Failure to Correct a False Impression*

The defendant has been charged with one count each of "theft by deception - false impression" and "theft by deception - failure to correct a false impression" pursuant to 18 Pa.C.S. §3922(a)(1) and (3), respectively. This statute provides in pertinent part as follows:

(a) A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including impressions as to law, value, intention or other state of mind...

(3) fails to correct a false impression which the deceiver previously created or reinforced...18 Pa.C.S. §3922(a) (1), (3).

The Commonwealth must also establish that the victim relied on the false impression created or reinforced by the defendant. *Commonwealth v. McSloy*, 751 A.2d 666, 669 (Pa. Super. 2000).

Here, viewing the evidence in the light most favorable to the Commonwealth, defendant reported several items stolen which were not in his possession at the time of the

purported burglary. He then met with Chartis Insurance Company's insurance claim adjusters and relayed that several of the items had been stolen from his possession and provided an itemized list of the items and their purported values in excess of $107,000. Defendant submitted a false insurance claim to Chartis for the items, and in return, defendant received $98,183.71. He then deposited the check into his father's bank account. Chartis Insurance Company relied upon the deception because its claim adjustor accepted defendant's insurance claim and reimbursed defendant for the value of the items.

Furthermore, after depositing the check, defendant made no attempt to return the money to the insurance company. The facts as presented sufficiently establish prima facie evidence of the two charges for theft by deception.

c. *Insurance Fraud*

Defendant has also been charged with committing insurance fraud pursuant to 18 Pa.C.S. §4117(a)(2), which provides as follows:

(a) Offense defined. -- A person commits an offense if the person does any of the following:

(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.18 Pa.C.S. §4117(a)(2).

In our case, defendant relayed that several items were

taken from his home after a burglary. Defendant presented the insurance company with a detailed list of items that were stolen from his residence with a replacement value of $107,000. However, when investigated by detective, detective uncovered that several of the items reported as stolen by defendant were not in defendant's possession at the time of the purported burglary. The evidence presented establishes that several large electronic items such as the 26-inch LCD HD TV and the 65-inch HD TV televisions had been returned by defendant to Best Buy, and that he gave an ATV away to pay off an alleged debt. The evidence also establishes that defendant knew these items were not in his possession at the time of the "burglary" because he was the individual who personally returned the electronics to Best Buy and who delivered the ATV to Troutman. Defendant then filed an insurance claim with Chartis Insurance Company to collect reimbursement money for the items in question, even though defendant had already profited from either trading them in or returning them to Best Buy for a credit. These facts are sufficient to establish that defendant committed the crime of insurance fraud.

### d. *False Reports*

Finally, defendant has been charged with false reports pursuant to 18 Pa.C.S. §4906(b)(1), which provides:

(b) Fictitious Reports. -- Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:

(1) reports to law enforcement authorities an offense or other incident without their concern knowing that it did

not occur. 18 Pa.C.S. §4906(b)(1).

Here, defendant called the Pocono Township Police Department to report a burglary of his home sometime between the night hours of March 16, 2010 and the early morning hours of March 17, 2010. Defendant advised detective that he had left his house to travel to New Jersey for business. He relayed that he returned briefly at 9:15 p.m. and left again at approximately 10:30 p.m. and that he would be appearing on a Fox television program the morning of the 17th. Defendant then stated that he returned home on the 17th to find that the door leading into his garage was a jar and that several items were taken from his home.

However, when defendant met with Dorbert, the insurance adjuster from Chartis Insurance, defendant relayed a conflicting story about his whereabouts the night of the alleged burglary. Defendant indicated that he left his home on the 16th at 8:10 p.m. to go to an awards dinner in New Jersey and that he was going to be on a Fox talk show in the morning. A review of the broadcasting tapes revealed that defendant was not on the Fox show the morning of the 17th. Defendant also stated to detective that he had an alarm system on his home but that it was not activated on the night of the 16th because it was generating too many false alarms. Moreover, defendant stated that he took his four German Shepherd dogs with him because he had no one to watch them.

Defendant later provided a list of all the items allegedly stolen, including items which were verified as having been returned, exchanged or given away. Even if the burglary occurred, it could not have involved several of the items

at issue, including the ATV, the 65-inch television, and the 26-inch television. As previously discussed, the Commonwealth has presented sufficient evidence that defendant did not own the items at the time of the alleged offense and that the items were not stolen from defendant's home. Submitting these items on the insurance claim as stolen establishes a prima facie case for the offense of false reports. Defendant's motion for habeas corpus relief will be denied.

### 2. *Motion to Compel Discovery*

Defendant filed a motion to compel: (1) the production of an audio recording of defendant, (2) criminal records of defendant and (3) criminal records of the Commonwealth's potential witnesses.

Pa.R.Crim.P. §573, pertaining to pretrial discovery and inspection, provides in relevant part as follows:

(B) Disclosure by the Commonwealth.

> (1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (a)    Any evidence favorable to the accused that is material either to guilt or to punishment, and is

within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

(2) Discretionary with the court.

(a) In all court cases, except as otherwise provided in Rule 230 (disclosure of testimony before

investigating grand jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses;

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

(D) Continuing Duty to Disclose. If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness. Pa.R.Crim.P. §573.

The comment to the rule further provides:

> It should also be noted that as to material which is discretionary with the court, or which is not enumerated in the rule, if such information contains exculpatory evidence as would come under the *Brady* rule, it must be disclosed. Nothing in this rule is intended to limit in any way disclosure of evidence constitutionally required to be disclosed. *Id.*

The United States Supreme Court case *Brady v. Maryland* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Therefore, under this rule, the Commonwealth has no duty to bring evidence to the defendant's attention that is not exculpatory. See *Commonwealth v. Pirela*, 556 Pa. 32, 45-46, 726 A.2d 1026, 1033 (Pa. 1999). "Exculpatory evidence is evidence that is material to a determination of guilt or innocence or affects the credibility of key prosecution witnesses." *Commonwealth v. Herrick*, 660 A.2d 51, 60 (Pa. Super. 1995).

a. *Audio recording*

Defendant argues that the Commonwealth has yet to provide the audio recording of defendant speaking with his insurance company, which has been provided in a transcribed version only. In the event the Commonwealth receives a clear recording from the insurance company, they shall immediately provide a copy to defendant.

b. *Defendant's Criminal Record*

Defendant next argues that the defendant's criminal record, if any, is believed to be in the possession of the Commonwealth, and defendant wishes an opportunity to review the same. Rule 573 section (B)(1)(c) explicitly provides that a defendant's prior criminal record must be disclosed to the Commonwealth. As such, to the extent the Commonwealth has not produced defendant's criminal record to the defendant, it shall do so immediately.

### c. *Criminal Records of the Commonwealth's Potential Witnesses*

Defendant argues there are potential Commonwealth witnesses identified in discovery that may have criminal histories which would show convictions of crimen falsi which defendant also wishes to review for impeachment evidence. Defendant claims that the Commonwealth has knowledge of at least some of the witnesses' criminal history because the Commonwealth prosecuted the witnesses in the past.

Rule 573 does not require the Commonwealth to disclose potential witnesses' criminal histories. The Commonwealth is only required to provide defendant's prior criminal history. Furthermore, any information pertaining to witnesses the Commonwealth intends to call at trial is discretionary with the court. Under the discretionary portion of the rule, section (B)(2)(iv) provides a catch-all provision which includes "any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice." §573(B)(2)(iv).

To the extent the Commonwealth has prosecuted and

obtained convictions of crimen falsi any of its proposed witnesses, the Commonwealth shall turn such information over to defendant.

### 3. *Motion to Continue Trial*

Defendant filed a motion to continue trial from the March criminal trial term, arguing that defendant requires additional time to assemble documentation and to conduct investigations which are critical to his defense. We will grant defendant's request. This matter shall be continued to the May criminal term of court. All time resulting from the continuance of trial shall run against defendant and not the Commonwealth.

Accordingly, we enter the following order.

### ORDER

And now, March 15, 2011, upon consideration of defendant's omnibus pretrial motion, it is hereby ordered as follows:

1. Defendant's motion for habeas corpus relief is denied.

2. Defendant's motion to compel production of the audio recording is granted. in the event the Commonwealth receives a clear recording of defendant's conversations with his insurance company, the Commonwealth shall provide a copy of same to defendant. To the extent the Commonwealth does not have, obtain or receive such a recording, the Commonwealth shall have no obligation to provide same to defendant.

3. Defendant's motion to compel defendant's criminal

history is granted.

4. Defendant's motion to compel the criminal histories of the Commonwealth's potential witnesses is granted in part. To the extent the Commonwealth has prosecuted and obtained convictions of crimen falsi any of its proposed witnesses, the Commonwealth shall turn such information over to defendant.

5. Defendant's motion to continue trial is granted. Trial is continued to the May term of court. Defendant shall appear for the call of the criminal trial term on April 19, 2011 at 8:30 am in Courtroom No. 1 of the Monroe County Courthouse, Stroudsburg, Pennsylvania. Defendant shall appear for the May criminal trial term on May 3, 2011 at 9:00 am in Courtroom No. 1 of the Monroe County Courthouse. All delay resulting from this continuance shall run against defendant and not the Commonwealth.